[No. 785. Decided April 29, 1893.]

*In the matter of the Guardianship of Seymour Wetmore :*
*Appeal of* WILLIAM H. REEVES, *Guardian.*

HABITUAL DRUNKARD — APPOINTMENT OF GUARDIAN — WHEN
WANT OF JURISDICTION CURED.

The appointment of a guardian for the person and estate of one
whose mind has become unsound from the constant and excessive
use of alcoholic liquors, thereby rendering him incapable of con-
ducting his own affairs, is authorized by § 1154, Code Proc.  (HOYT,
J., dissents.)

Although the court did not have jurisdiction to appoint a guar-
dian for a habitual drunkard, for the reason that the latter was not
before the court at the time, yet where, without attacking the pro-
ceedings, he subsequently submits himself to the jurisdiction of the
court by filing a petition denying the allegation of the original peti-
tion, and asking for an investigation upon the merits and for an
order setting aside the appointment of such guardian, the court
thereby obtains jurisdiction of his person, and from any final order
in the premises appeal will lie.  (HOYT and STILES, JJ., dissent.)

*Appeal from Superior Court, King County.*

*Winsor, Farwell & Morris,* for appellant.

*Snell & Johnston,* and *Fred H. Peterson,* for respondent.

The opinion of the court was delivered by

SCOTT, J.— On July 14, 1892, appellant was, by the su-
perior court of King county, HUMES, J., presiding, ap-
pointed guardian of the person and estate of the respondent
Seymour Wetmore, and thereafter qualified and entered
upon the discharge of his duties as such guardian.  In
September following, the respondent filed his petition in
said superior court asking that the order appointing such
guardian be set aside and vacated.

The foundation of the original petition asking for the
appointment of said guardian was upon the following
grounds: That the said Seymour Wetmore was and had

been for a long time continually and excessively addicted
to the use of alcoholic liquors as a beverage, and had be-
come and was a habitual drunkard, and that by reason
thereof, and of his long continued dissipation, he had be-
come, and then was, totally incompetent and unfit to trans-
act his own business and to conduct his own affairs. That
he was possessed of an estate of the value of sixty-four
thousand dollars, and that he was squandering the same
recklessly and extravagantly by reason of his mismanage-
ment and habits of recklessly expending and squandering
money with dissolute companions and otherwise.

The petition of said Seymour Wetmore was filed as an
answer to these allegations, denying the same except that
he was possessed of an estate, etc., praying for a hearing
thereon, and asking that the original proceedings be
quashed and set aside to the effect that his estate might be
returned to him and be placed under his own management.

Said last petition came up for hearing before the equity
department of said superior court on the 19th day of Sep-
tember, 1892, Lichtenberg, J., presiding. The respond-
ent was called and testified. Whereupon one Dr. Walsh,
a physician, was called by respondent as a witness, and was
asked a question by his attorney as to the sanity or insan-
ity of the respondent. Whereupon counsel for appellant
stated that there was no question of sanity or insanity in
the case, and that unless the law authorized the appoint-
ment of a guardian for persons incapable of conducting
their own affairs other than insane persons, that the pro-
ceeding must be dismissed. The record does not very
clearly show the reasons which led the court to take the
action it did take in the premises. We think, however,
the claim of the appellant is fairly maintained, which is
that upon the admission that appellant did not propose to
prove that the respondent was insane, the court held it had
no jurisdiction to proceed in the premises on the ground

that the law did not authorize the appointment of a guardian for other than an insane person.    The testimony and conduct of the respondent was not such as would have commended him to the court as a competent person to take care of himself.    In fact it seems to us that the contrary may be very strongly inferred from his own testimony, and that it appears therefrom that he was grossly incompetent and entirely unfit to care for his property; that he was squandering the same in a reckless and riotous manner of living and upon dissolute persons, and was speedily traveling the road to penury, as well as injuring himself by reason of his excesses.

No further witnesses were called by either party, nor was any further evidence offered, nor does it appear that the case was submitted to the court upon the merits, as the respondent claims, or that there was any argument thereon other than upon the law point involved, nor did either side rest upon the merits, but the court directed the previous proceeding appointing the guardian to be vacated and set aside, whereupon said guardian excepted and appealed.

The act in question is to be found at ch. 15, title 12 of the Code of Procedure, the same having been carried from ch. 110 of the Code of 1881, commencing at p. 276.    Sec. 1154 of the present Code, being § 1631 of the 1881 Code, except as changed by substituting superior courts for probate courts, provides that such courts shall have power to appoint guardians to take the care, custody and management of all idiots, insane persons, and all who are incapable of conducting their own affairs, and of their estates, real and personal, the maintenance of themselves and families and the education of their children.

An act to provide for the management of hospitals for the insane, approved March 13, 1890, to be found at p. 482 of the Session Laws of 1889–90, was evidently thought by the compiler to have repealed certain sections contained

in the chapter found in the Code of 1881, and the same
are not carried forward in the present compilation. The
question as to whether the same are repealed or not is im-
material here. It will, however, be necessary to refer to
them to some extent to assist in arriving at the scope of
the act, for the repeal of the sections omitted did not limit
the range or scope of the remainder of the act so as to ex-
clude the class in question therefrom, if it was originally
included.

The language of the act is somewhat obscure; for in-
stance, idiots, insane persons and all who are incapable of
conducting their own affairs are mentioned in the first sec-
tion as persons for whom a guardian may be appointed.
In the next section, 1632 of the 1881 Code, it is stated,
upon the application of any person setting forth that any
person by reason of insanity is unsafe to be at large or is
suffering under mental derangement, that the court shall
cause such person to be brought before it for the purpose
of examining into the sanity or idiocy of such person, and
throughout said section such person is alluded to as such
insane or idiotic person. The next section, 1633, speaks of
such insane person only. Section 1635 says that, if it be
found by the court that the person so brought before it is
of unsound mind and incapable of managing his own af-
fairs, the court shall appoint a guardian for the estate of
such insane person. Section 1636 speaks of such person
found to be insane or coming within the provisions of this
act, etc. Section 1637, in dealing with the same subject,
designates such person as an insane person only.

It is evident that the word "insane" as used here was
intended to cover every person for whom a guardian might
be appointed under the provisions of the act, and that it
was meant to include idiotic persons and, as well, all who
were incapable of managing their own affairs by reason of
any unsoundness of mind due to whatever cause. The in-

tent of the law was evidently to include all such persons, to the end that all such might be properly cared for, and that their estates might not be squandered, and such persons thus made to become a public charge, and it was not simply to provide relief only in cases of insane persons or of insane or idiotic persons. The object of the law was to make such a provision in all cases, and not to draw a distinction between classes. There would be no reason for any such distinction, while otherwise the object is clearly apparent. Consequently, we are of the opinion that the law as it stands, and as embraced in § 1154 aforesaid of the present code, is adequate to authorize the appointment of a guardian for any person of such unsoundness of mind as to be incapable of conducting his own affairs, etc., and that the learned court below erred in holding otherwise.

Some preliminary questions were presented at the hearing, one of which was a motion to dismiss the appeal on the grounds that said order vacating the order appointing the guardian was a discretionary one, resting wholly within the discretion of the lower court, and was not an order from which an appeal could be taken. But the court, being of the opinion that an appeal would lie therefrom, denied the motion.

It was contended by the appellant that, as the order appointing a guardian had been originally granted by HUMES, J., who was one of the judges of said court, LICHTENBERG, J., another judge of said court, had no jurisdiction to entertain the subsequent proceeding which was in effect an attack upon the first, and appellant contends that it resulted in a clashing of authority between the judges of the same court, and that one judge of a court had no right to undo what another judge had done. We do not find anything in the record, however, to warrant this contention. It appears that this proceeding belonged to, and was originally instituted in, the equity department of said court, which

was generally presided over by Lichtenberg, J., but at the time the original petition was presented and came on for hearing said judge was absent, and Humes, J., was temporarily presiding therein, and consequently heard and disposed of the matter, and that when the subsequent petition by respondent was filed asking for a reopening of the matter, and a vacation of the previous order, Lichtenberg, J., was then presiding over his regular department of said court, and the matter came on properly for hearing before him. . There was no such undignified spectacle presented as an attempt upon the part of one of said judges to counteract the will and purpose of the other, and we are not required to pass upon any such question. On the contrary, said matters were heard and disposed of regularly in an appropriate manner, so far as the presiding judges were concerned.

It further appears from the record, although no question is properly raised thereover by the respondent, nor was one raised by him at any time in said proceeding, that the respondent was not present at the hearing first had when said guardian was appointed. Process had been served upon him citing him to appear, which for some reason he did not see fit to do. We are of the opinion that the court had no jurisdiction to proceed, not having the respondent personally present at the time. A mere service of a notice to appear in such cases, it strikes us, is clearly insufficient. It is inconsistent, certainly, to charge him with being incapable of managing his own affairs and at the same time hold him responsible for a failure to appear to protect his own rights in the premises. The act is silent as to the issuing of any process to bring such person before the court. Sec. 1155, being § 1635 of the 1881 Code, says if it be found by the court that the person *so brought before it*, etc. Sec. 1632 of the 1881 Code, which, as stated, is omitted from the present compilation, directed the court

to cause such person to be brought before it at such time or place as it should direct, but was otherwise silent as to the manner of bringing such person before the court. Regardless of this, or of the absence of any other special provisions in the chapter, the court has the inherent power to cause such person to be apprehended and brought before it upon its order, and this should be done in all cases.

Here, however, the proceedings were not attacked upon this ground, but the respondent voluntarily came in and submitted himself to the jurisdiction of the court, and asked for a hearing upon the merits. He filed a petition denying the allegations in the original petition, alleging reasons why he was not present at the previous hearing and asked for an investigation upon the merits and that said order appointing such guardian be set aside. Under the circumstances, we are of the opinion that the court at that time obtained jurisdiction over his person, and, being of the opinion that the superior court erred in holding that the law does not authorize the appointment of a guardian for any other than an insane or idiotic person, its ruling in the premises is reversed, and the cause is remanded for further proceedings.

Upon the argument of the case here the appellant came in with a reply brief but recently filed and long after the time therefor had expired, the same having been placed on file without the consent of the court, and without any notice to the respondent. For these reasons the respondent moved to strike said brief from the files, and his motion was granted, and consequently the appellant will not be allowed to recover costs for such reply brief.

DUNBAR, C. J., and ANDERS, J., concur.

HOYT, J. (*dissenting*).—I think the order of the lower court should be affirmed. It is clear to me that, at the time Judge HUMES made the order which was vacated, he had no

jurisdiction whatever to do so. If this was the case, the order was not simply voidable, but was absolutely void, and could have been attacked collaterally. If this were so, I do not think that it should be held that the person against whom such order was made had given it validity by appearing in the proceeding, even although he did not attack it upon the ground of the want of jurisdiction of the court to make it. So soon as the attention of the court was called to the fact that such order was made without jurisdiction, it became its duty to clear its records of such void order by vacating it, and as that was the legal effect of the order from which this appeal was taken, it follows that, whether or not the reasons given by the court were sufficient, its action was correct, and should be affirmed.

This consideration alone is sufficient to determine the appeal; but, in my opinion, if the hearing had upon the motion to vacate was to be considered as an original hearing of the petition for the appointment of a guardian, and the merits of such petition properly a subject of decision therein, the ruling of the lower court was correct.

I do not think that the statute under which the proceeding was had was designed to protect the estate of one who voluntarily, for a brief time, incapacitates himself so that he cannot properly look after the same. The whole tenor of the statute and of the remedy provided, and the means by which the proceeding could be terminated, to my mind show clearly that the legislature intended it only to be applied to those cases of insanity or imbecility, or to causes of like nature, which might be presumed to be, at least to a certain extent, permanent. Under the statute, the guardian could only be appointed when the person was incapable of managing his own affairs for the reasons stated therein, and just as soon as the incapacity was removed he was entitled to have the appointment set aside. Such being the provisions of the statute, they cannot well be applied to a

case of drunkenness, whether habitual or otherwise.   A person for this reason might be totally incapable of managing his affairs one day, yet entirely capable the next.   The result would be, if this statute is held to be applicable to such cases, that the court could be called upon one day to appoint a guardian for such person, and would have no discretion excepting to do so, and on the very next day might be called upon to vacate such appointment, and be likewise without any legal discretion to refuse.   I do not think that the legislature intended that the courts should be thus engaged from day to day in this business of appointing and discharging guardians.   A man may be a habitual drunkard, and a portion of the time as completely incapable of managing his own affairs as though he were absolutely insane, and yet, during the remainder of the time, perfectly competent, and the alternations of competency and incompetency may occur not only from day to day but even from hour to hour.

Beside, I have serious doubts whether the statute as it now stands is of any force or effect excepting as taken in connection with the power of the court to commit to an insane asylum, but this latter question it is not necessary to raise in this case.

STILES, J. — I concur with what Justice HOYT says upon the jurisdictional question, but as to the remainder of the case I am with the majority.