MARY F. COOMES, Appellant, v. CARL MAYER, Appellee.

GUARDIAN AND WARD: Tenure of Guardian—Unsupported Apprehension. The court will not continue a guardianship simply on the unsupported apprehension that the ward, who has attained a great age, may be despoiled of her property by her husband, when it appears that the ward is otherwise competent to direct her business affairs.

Headnote 1:   32 C. J. p. 665 (Anno.)

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

NOVEMBER 17, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

THIS is a proceeding brought by the plaintiff against the defendant, as the guardian of her property, to terminate the guardianship on the ground that she is now capable of managing

her own property. Upon hearing had, the district court denied the petition, and the plaintiff appeals.—*Reversed.*

*Leroy E. Corlett* and *Thomas J. Bray,* for appellant.

*Devitt & Eichhorn* and *McCoy & McCoy,* for appellee.

EVANS, J.—The plaintiff is 79 years of age, and is the owner of an unincumbered farm of 80 acres, occupied by her as her home, and of personal property to the amount of approximately $15,000, consisting of moneys and credits. In October, 1923, a guardian was appointed for her, upon the instigation of relatives, but finally with her written consent. After the expiration of six months, she brought this proceeding under the statute, to terminate the guardianship. The evidence in the case involves family history and family relations. The husband of the plaintiff, Reuben Coomes, died testate in 1913, and left the plaintiff as his surviving widow and sole beneficiary of his will. Charles Hull, a near neighbor and long-time friend, was appointed to administer the husband's estate. After the administration of the estate, Hull continued as the friend and adviser and general agent of the plaintiff in the management of her business. Such business has always been managed successfully, and has resulted in a substantial increase to the property acquired through the will of the · husband. During all the years, the plaintiff has maintained a clean and attractive home upon her farm. In February, 1923, the wife of Hull died. In October, 1923, the relatives of the plaintiff discovered signs of a courtship. This stimulated them to the guardianship proceeding. The courtship culminated in the marriage of plaintiff and Hull in May, 1924. Hull is 66 years of age. The marriage is a happy one, and is looked upon by the plaintiff as her sole dependence for care and comfort in her old age. The mental condition of the plaintiff is approximately normal for her years. She has an only child, a daughter, who was married 40 years ago, and is herself now a grandmother. The relations between mother and daughter have been strained for many years. Unfortunately the daughter is the real adversary of the plaintiff, though not a party to the proceeding.

The plaintiff was examined as a witness, and cross-examined at length. We have read carefully such examination. We think she bore the examination as well as could be expected from a person of her years and of her experience. It does appear, however, that the actual experience of the plaintiff in the transaction of business is very limited. Her early education was very slight. Her ability to write is very limited, and consists mainly of the making of her signature. She never wrote a letter. Though she kept her money in the bank, she never wrote a check. During the lifetime of her husband, he transacted all the business of the family. Since the death of her husband, all such business has been transacted for her by Hull. The result is that she has been indifferent to the details of her business, and knows very little about them. She has trusted Hull implicitly. So far as appears from the record, such trust has not been abused. But the effect of it has been that it has left the plaintiff quite inexperienced in actual business transactions, and quite dependent upon the help and advice of others. In addition to these facts, one medical witness, Dr. Clark, testified that, though plaintiff's physical condition was substantially normal for her years, yet her mentality was that of a child. Three other physicians testified that plaintiff's condition was normal for her years, both physically and mentally, and that she was substantially free from arteriosclerosis. The testimony of Clark had some corroboration in the facts which we have above recited.

This is the feature of the record which doubtless influenced the trial court to continue the guardianship, for the time being. The proceeding is brought under the provisions of Section 3222 of the Code of 1897. The apparent apprehension is that Hull, the former adviser, having become the husband of the plaintiff, may thereby be able to influence her to the detriment of her property rights. This is intensified somewhat by the fact that two sons of Hull's are borrowers from the plaintiff to the amount of about $3,500, and that the plaintiff had supposed that Hull was a surety on the notes, whereas he is in fact named as a joint payee thereof with the plaintiff. The solvency of these borrowers, however, is not challenged in the record.

We are disposed to recognize a large discretion in the trial court in its refusal to terminate a guardianship. *Haworth v.*

*Stanley* (Iowa), 200 N. W. 410 (not officially reported). Our reason for this attitude is that such refusal does not prevent a later consideration of the same question in the light of intervening events. Nor does it forbid a liberal and sympathetic administration of the guardianship in such a way as to curtail as little as possible the plaintiff's enjoyment of her property rights.

On the other hand, we recognize that a guardianship proceeding is not adversary. *Timonds v. Hunter,* 169 Iowa 598. Such proceeding is both prosecuted and defended in the interest of the ward alone. We scrutinize a verdict adverse to the ward more closely than we do in a case between litigants whose interests are adversary. *Huffman v. Beamer,* 198 Iowa 1113.

In the case at bar, if the plaintiff is not entitled to a termination of the guardianship upon this record, she can never be entitled to it. The guardianship of a spendthrift or of one who is subject to evil habits may well be held over the ward for a time of testing his recovery of self-control. Nothing of that kind is involved here. In the very nature of the case, the plaintiff's capacity to control her property cannot improve. The only fact appearing in the record as a reason for continuing this guardianship is the natural apprehension that her new husband has acquired sufficient influence over her to enable him to despoil her and to defraud her of her property. Such apprehensions are not to be indulged in. The moral character of the husband is unchallenged. He is financially responsible. That he has the stronger personality and that he can thereby have an influence upon his wife is apparent. But if he shall hereafter, through undue influence, despoil her of her property, the law affords ample remedy. It is not proper that we should be impelled by mere apprehensions to sustain a guardianship over a person otherwise competent. The encroachment and harshness of such a guardianship upon the natural rights of a property owner are well illustrated in this case. The administration of the guardian has been honest, but rigid and unsympathetic. Up to the time of the trial, the plaintiff had not received a dollar from her guardian. For all practical purposes her estate has been sequestered, and is held in conservation for the benefit of the prospective heir. She asked for $200 for the

purpose of paying the expenses of this proceeding. This request was refused, and is charged against her as evidence of her incapacity. She signed a contract for an automobile, to cost $800; but her purpose was circumvented, and this also is charged against her as a reason for the guardianship. If she could sanely have bought such an automobile in the absence of guardianship, we perceive no reason why it should not be a proper expenditure after her guardianship. The fact that she could not drive the automobile herself was no reason for refusing her the privilege of buying one. She had the natural right to permit her husband to drive it for her, and this is true even though it might be apprehended that the husband might use the same also for his own purposes. The property involved was that of the plaintiff, whether the guardianship be continued or terminated. In either event, there is no reason why it should not be devoted heartily to her reasonable enjoyment. Her estate is not a mere heirloom, to be preserved intact, regardless of resulting privation to her. In view of her normal condition, she should be permitted to exercise her constitutional right to the pursuit of happiness, and to select for herself the enjoyments which she would purchase.

For these reasons, we are constrained to the view that her application for the termination of the guardianship should have been sustained.

The order of the district court is, accordingly, reversed.—— *Reversed.*

FAVILLE, C. J., and STEVENS, VERMILION, ALBERT, and MORLING, JJ., concur.