[No. 28131. Department One. April 11, 1941.]

*In the Matter of the Guardianship of* SOPHIA MICHELSON, *an Incompetent Person.*[1]

'Reported in 111 P. (2d) 1011.

*Cushing & Jones,* for appellant.

*Sugg & Mason* and *McMullen & Snider,* for respondents.

MAIN, J.—This is an appeal from an order of the superior court refusing to revoke a previous order appointing guardians for the estate of Sophia Michelson.

Mrs. Michelson testified that she was seventy-nine years old, a resident of Hockinson, Clark county, this state, a widow, her husband having died about eight or nine years ago, and the mother of ten children, all

living. Considerable property was accumulated by Mrs. Michelson and her husband during his lifetime. After his death, Mrs. Michelson managed the property, and this was done only with the assistance of her sons and daughters from time to time because she could not read, write, or speak the English language. The value of the property was approximately twenty thousand dollars, which consisted of real and personal property, notes, mortgages, and other securities.

Mrs. Michelson had loaned money to her sons and daughters, or the husbands of some of them, from time to time, for which she took notes, secured by mortgages. The family relations among the children appear to have become strained, for reasons not here material, and, as a result, they were more or less divided into two groups or factions, each seemingly afraid the other was going to get the mother's property. As a result of this, and on January 31, 1939, two of the daughters petitioned the superior court to appoint guardians for the estate of their mother. When this matter came on to be heard, Mrs. Michelson was in court and gave her consent to the appointment of Hilma Reinikka and Peter Hill as guardians.

About a year later, and on February 15, 1940, Mrs. Michelson petitioned the superior court to revoke the former order appointing the guardians for her estate. After this petition was filed, five of the children filed objections to the revocation. A hearing was had in which testimony was offered, and, at the conclusion of the trial and after argument of counsel, the trial judge delivered from the bench a comprehensive oral opinion which expressed the view that, inasmuch as there had been no change for the better in Mrs. Michelson's condition since the previous order, he would decline to grant the application, and an order to

this effect was entered, from which Mrs. Michelson appealed.

In their brief, the respondents move to dismiss the appeal, because they claim that no notice of appeal was given to the five children who filed objections to the application for revocation, and that the bond did not run to them as obligees.

■ The record shows that all of the parties appeared by their respective attorneys and that the notice of appeal was served upon these attorneys. In Rem. Rev. Stat., § 1720 [P. C. § 7294], it is expressly provided that service upon an attorney, who was the attorney of record for the party in the cause at the time the judgment or order appealed from was entered, "shall be deemed service on such party in all cases where service is required by this title."

■ The bond given runs to Peter Hill and Hilma Reinikka, guardians of the estate of Mrs. Michelson. It does not run to the five children who filed the objections.

In Rem. Rev. Stat., § 1721 [P. C. § 7295], it is provided that an appeal in a civil action or proceeding shall become ineffectual for any purpose unless at or before the time the notice of appeal is given or served, or within five days thereafter, "an appeal bond to the adverse party," conditioned for the payment of costs and damages as prescribed in § 1722 [P. C. § 7296], be filed with the clerk of the superior court, or money in the sum of two hundred dollars be deposited with the clerk in lieu thereof. Construing this statute, it has been repeatedly held by this court that a bond must run to all parties "whose interests" will be affected by a reversal or modification of the judgment or order appealed from. *United Truck Lines v. Department of Public Works,* 181 Wash. 318, 42 P. (2d) 1104; *In re Flint's Estate,* 193 Wash. 355, 75 P. (2d) 935. It was

not necessary that the bond run to the five objectors in the proceeding because they had no legal or equitable interest in their mother's property and, naturally, could not be affected adversely by a reversal of the order appointing the guardians.

The motion to dismiss the appeal will be denied.

■ We now come to the merits. Mrs. Michelson had a right to file the petition for revocation and to have the property restored to her possession. Such an application is not a new proceeding. It is a continuation of the original guardianship proceeding. In 22 Cyclopedia of Law and Procedure, 1147, it is said:

"The lunatic himself may institute a proceeding for revocation of the letters of guardianship on the ground that he is restored to reason. Such an application is not a new proceeding; it is a continuation of the original guardianship proceeding; . . ."

Whether it is necessary to show a change for the better of mental condition before an order of revocation of the prior order appointing a guardian is necessary, in view of the fact that the revocation sought is a continuation of the original guardianship proceeding, will be passed without determination.

As above indicated, the trial court was of the belief that the mental condition had not changed for the better, and, for this reason, denied her application. It will be assumed, but not decided, that, before the court can entertain an application by the ward for revocation of letters of guardianship, there must be a change for the better in his mental condition. Inquiry will now be directed as to whether the record in this case shows such change.

The order appointing the guardians, in part, provided:

"That the said Sophia Michelson is of the age of 79 years and is not able to attend to her business affairs

on account of the feeble condition of her memory;
. . .

"That it is advisable on account of the age and mental condition of the said Sophia Michelson that guardians be appointed to take charge of her business and property, and care for and conserve the same in the manner provided by law."

The order declining to revoke the previous order contains this:

"The Court further heard all of the evidence adduced by any and all of the parties touching upon the advisability of discharging the guardians and restoring the incompetent to her estate, and also argument of counsel on this point. And the Court concludes that there was not sufficient showing of any marked improvement in the condition and circumstances surrounding the incompetent since the original adjudication and appointment, and that it would be to the best interests of the incompetent to continue the guardianship for the present."

It will be noted that, in the first order, it is expressly provided that the guardians are appointed on account of the "feeble condition of her [Mrs. Michelson's] memory." In refusing to make the revocation, the court, in its order, states that there was not sufficient showing of any "marked improvement in the condition and circumstances surrounding the incompetent since the original adjudication . . ." From this, it does not appear that the court found that there was no change in the mental condition of Mrs. Michelson in so far as her memory was concerned.

From the oral opinion delivered by the court, above referred to, we shall quote one paragraph which appears to us to epitomize the trial court's view, which is as follows:

"I have no doubt that if she [Mrs. Michelson] were dealing with strangers or others than her own children, she would be in condition to manage her own

affairs pretty well; she is plenty able to do it; but with her own children, there is a question whether she is sufficiently strong in her will power to remain just and impartial towards all her children and, in addition to that is the situation—I don't think there has been any change for the better in her situation since this matter was passed upon a year ago, so, everything considered, I am clearly of opinion that the guardian-ship ought to be continued."

From this, it appears that the court was of the view that the reason that the guardianship should be continued was on account of lack of will power, which, of course, is not the same thing as the "feeble condition of her memory."

■ The testimony given upon the first hearing is not before us, and we must take what the order appointing the guardians says at its face value. If Mrs. Michelson's memory, at the time of making the appointments, was feeble, it certainly was not such at the time of the hearing on her application for a revocation. This can be easily demonstrated by a quotation of a portion of her testimony given upon that hearing. On being interrogated as to how much property she had and what it consisted of, she testified as follows:

"Q. How much property do you own, Mrs. Michelson? A. A little over twenty thousand. Q. Of what does that consist? A. Cattle and real estate and notes and mortgages, and so forth. Q. Who are some of the people that owe you money on notes? A. Mr. and Mrs. Sakrison, Mrs. Hilma Reinikka, Mr. Granlund, Mrs. Ahola, George Kari at Hockinson, Johnson at Hockinson, William Michelson—Q. How much does William Michelson owe you? A. Six thousand. Q. How much does Albert Michelson owe you? A. Two thousand. Q. How much does Hilma Reinikka owe you? A. Seventeen hundred, or thereabouts. Q. How much does G. F. Sakrison owe you? A. Two thousand five hundred. Q. How much does William Ahola owe you? A. I think it is eighteen hundred.

334

MR. CUSHING: I would like your Honor to follow this inventory. Q. How much does William Reinikka owe you? A. One hundred dollars, if not more. Q. One hundred, if not more, is that what you said? A. Yes. Q. Is that note secured, or not? A. Yes, a note. Q. What is that? A. Yes, a note. Q. Just the note? A. Yes. Q. Is that note secured? Do you have a mortgage with that? A. Just the note. Q. How much does Dan Aho owe you? A. Approximately one hundred dollars. Q. How much does George Kari owe you? A. It is three hundred. Q. How much does Granlund owe you? A. Two thousand five hundred. . . . Q. How much money does A. A. Johnson owe you? A. Four hundred dollars. Q. How much does A. A. Kumlin owe you? A. She doesn't know. She says they were just figuring that up when it was taken away from her. Q. Does she know how much Charles Helberg owes her? A. She doesn't know about Helberg. Q. How much does Ed Kangas owe her? A. Two hundred dollars; several years ago. Q. How much does Henry Michelson owe you? A. She can't say much about that debt. Q. Why can't you say much about that debt? A. They have made a kind of agreement. The only agreement with Henry is $150 a year, and he has paid it once. Q. What was he to pay the $150.00 for? A. Rent for the land. Q. He has only paid that one year? A. Just once."

A person that can detail the various items of his or her property to the extent that Mrs. Michelson did in the above testimony undoubtedly has a very good memory. It is true that she was asked as to some other items of property which are of rather minor importance, and with reference to these she did not have the distinct, and apparently accurate, memory which she indicated in her testimony, above quoted. On this branch of the case, we conclude that, if Mrs. Michelson had a feeble memory at the time the guardians were appointed, there certainly has been a marked change in her mental condition in that respect.

With reference to the matter of will power, that not having been covered in the previous proceeding, this proceeding must be considered as though this were an original application for the appointment of guardians for her because of the claimed lack of mental capacity in that regard.

■ Rem. Rev. Stat., § 1565 [P. C. § 9897], provides that the superior court of each county shall have power to appoint guardians for persons and estates, or either thereof, of minors, "insane and mentally incompetent persons resident of the county, . . ." The statute does not define insane or incompetent persons. Under a statute of that character, the unsoundness of mind which would justify the appointment of a guardian must be more than a mere debility or impairment of memory. It must be such as to deprive the person affected of ability to manage his estate. If the person for whom a guardian is sought is capable of transacting the ordinary business involved in taking care of his property, and if he understands the nature of his business and the effect of what he does, and can exercise his will with reference to such business, notwithstanding the influence of others, he is not of unsound mind, and a guardian should not be appointed for his property. *In re Coburn,* 11 Cal. App. 604, 105 Pac. 924, 165 Cal. 202, 131 Pac. 352; 25 Am. Jur. 18, § 18; 14 R. C. L. 567, § 19; *In re Bayer's Estate,* 101 Wash. 694, 172 Pac. 842.

■ It must be borne in mind that the real object and purpose of a guardianship is to preserve and conserve the ward's property for his own use, as distinguished from the benefit of others. *Perry v. Roberts,* 206 Iowa 303, 220 N. W. 85; *Guardianship of Reed,* 173 Wis. 628, 182 N. W. 329, 17 A. L. R. 1063. Guardians should not be appointed either of the person or of the property of one simply because he is aged or infirm, or

because his mind is, to some extent, impaired by age or disease. *Richardson v. Richardson,* 217 Iowa 127, 250 N. W. 897; *Guardianship of Warner,* 232 Wis. 467, 287 N. W. 803.

■ In the case now before us, the evidence shows, and the trial court expressed the view, that Mrs. Michelson had sufficient will power to manage her own affairs when dealing with strangers or others than her own children. So far as we are informed, there are no authorities holding that, when one group of children are of the view that a parent will not deal fairly with them in his disposition of his property, in the absence of overreaching or fraud, that furnishes any basis for the appointment of a guardian; and there is no evidence in this case which would justify a finding of overreaching or fraud. Apprehension in that regard is not to be indulged in. *Commes v. Mayer,* 201 Iowa 405, 205 N. W. 645. Mrs. Michelson has the right at her death to let her property pass in accordance with the provisions of the law, or, if she has sufficient competency, make a testamentary disposition thereof.

The question of whether Mrs. Michelson, if the guardianship should continue until the time of her death, would have had the right, during the existence of such guardianship, to make a testamentary disposition of her property, is a question which is not now before us, and we pass it without consideration or decision.

The order appealed from will be reversed, and the cause remanded with direction to the superior court to revoke the order appointing guardians for Mrs. Michelson and restore the management and control of the property to her.

ROBINSON, C. J., STEINERT, BLAKE, and DRIVER, JJ., concur.