[No. 28577. Department Two. February 14, 1942.]

*In the Matter of the Guardianship of* CLARINDA BELLE PROPES, *an Incompetent Person.*[1]

[1]Reported in 122 P. (2d) 454.

*Earl V. Clifford,* for appellant.

*Gordon & Gordon,* for respondent.

JEFFERS, J.—This is an appeal by Carolina Belle Propes, whose true name is Clarinda Belle Propes, from an order made and entered by the superior court for Pierce county, appointing Mary Jane Bosworth guardian of the person and estate of Clarinda Belle Propes, an incompetent person.

This is a companion case to case No. 28576, entitled "In the Matter of the Guardianship of Eliza C. Gage," *ante* p. 443. In this case, as in the *Gage* case, there are certain assignments of error which we shall discuss before passing to the question of whether or not the court was justified in finding Mrs. Propes incompetent.

It is first claimed by appellant that the trial court erred in adjudging appellant incompetent and appointing a guardian for her, without holding a hearing. We do not think there is any merit to this contention. It is true the hearings of the instant case and the *Gage* case proceeded somewhat informally, but the trial court recognized that each of the appellants was entitled to a separate trial, and so stated. Testimony was introduced in support of the petition for the appointment of a guardian for Mrs. Gage, and in support of the petition for the appointment of a guar-

dian for Mrs. Propes. Mr. Clifford, who appeared as counsel for both Mrs. Gage and Mrs. Propes, after his initial objection to the cases being consolidated, made no objection to the manner in which the court proceeded to hear the cases, and, after the testimony was all in, made no objection to the court's entering judgment in each case.

We are satisfied that there was a hearing on the petition for the appointment of a guardian for Mrs. Propes, and we are equally satisfied that Mrs. Propes was in no way prejudiced by the manner in which the hearing was conducted.

It is next claimed that appellant did not have a separate trial. What was stated by us in the *Gage* case, where the same contention was made, is applicable herein, and for the reasons therein announced, we find this contention of appellant without merit and not supported by the record.

It is next claimed the court erred in adjudging appellant incompetent without visiting her, or requiring her to appear in person in court, or affording her the final opportunity to appear in person. In the instant case, as in the *Gage* case, to which reference has been made, a written request was filed, signed by Mrs. Propes and her attorney, Mr. Clifford, that she be not required to appear in court on July 8, 1941. for the reason that she was infirm and aged, so as to make it probable that she would not be able to attend the trial. We also have a written recommendation of Dr. Heaton, made at the request of Mr. Clifford, that Mrs. Propes be excused from coming to the trial. In this case, as in the *Gage* case, all the provisions of the statute were followed relative to the service of notice on Mrs. Propes and the prosecuting attorney for Pierce county.

For the reasons assigned in the *Gage* case, we are of the opinion no error can be predicated upon the failure

of the trial court to have Mrs. Propes personally present in court during the proceedings, or upon the failure of the court to visit Mrs. Propes.

■ Appellant next contends the court erred in holding that the evidence introduced was sufficient to establish the incompetency of appellant.

In this case, as in the *Gage* case, Mr. Clifford offered no testimony contradicting the testimony introduced by petitioner, but was content with cross-examining the witnesses. It appears that, at the time this proceeding was commenced, Mrs. Propes was seventy-six years of age. It further appears that, prior to the institution of this proceeding, and up to the time she was brought to Tacoma by her niece, Mrs. Bosworth, Mrs. Propes had been living with her sister in a shack in Thurston county. The land upon which Mrs. Propes was living was an eighty acre tract, and had been owned by Mrs. Propes and her husband. The husband died in 1934, and the house which was on the place burned down in 1935. This house was insured for $1,100, but it does not appear what became of the insurance money.

After the house was burned down, Mrs. Propes and her sister lived alone in the shack referred to, under conditions almost unbelievable. They were living in filth, without any proper clothing or food. About June, 1941, the attention of the Thurston county welfare department was called to the condition of these two old ladies, and the matter was referred by the welfare department to the prosecuting attorney of Thurston county. These authorities were of the opinion that these ladies could not be allowed to live under the conditions then existing. Relatives were notified, and thereafter Mrs. Gage was taken to a hospital in Olympia, and afterwards removed to Tacoma, and Mrs. Propes was removed by Mrs. Bosworth to the latter's home in Tacoma.

We desire first to quote from the testimony of William N. Goodwin, who lived in the community where Mrs. Propes and Mrs. Gage were living, and who apparently had had some facts concerning these old ladies given him by the prosecuting attorney, and then made an investigation of their condition.

"A. I went out there and made inquiries and investigations and found that the two old ladies were living out there on this place and no one to take care of them; that they were not able to take care of themselves; that they were not sufficiently clothed or fed, and lived in a state of destitution; that Everett Rich, who claims to be a son of Mrs. Gage—I believe it was a son—had put them out there and had left them there and had not adequately provided for them. That is the extent of my knowledge. Q. Did you investigate as to the actual living conditions? A. I did not see them, but my investigation disclosed that they were in destitute circumstances and had no adequate clothing or food and that they were both so old that they were unable to care for themselves—either physically or mentally competent to handle their own affairs. Q. About how long ago was that? A. I made this investigation when I went out there to deliver a lease about two weeks ago last Sunday."

Mr. Levy Johnson, deputy prosecuting attorney of Thurston county, who investigated the condition of Mrs. Propes and Mrs. Gage while they were living on Mrs. Propes' place in Thurston county, testified that his investigation revealed that Mrs. Propes and Mrs. Gage were living in a condition which was unfit for humans to live in.

Mrs. W. F. Irving, a grandniece of Mrs. Propes, testified that, about three weeks before the hearing, Everett Rich informed them that Mrs. Gage was in the hospital at Olympia, and that Mr. and Mrs. Irving and Mrs. Irving's mother (Mrs. Bosworth) went down to Yelm; that the house had burned down and Mrs. Propes and

Mrs. Gage were living in a milk house, or store house; that Mrs. Propes had a gunny sack for a petticoat, and an old dress that had been a coat; that she had on a pair of slippers and socks which had been cut off, with nothing left on the heel. The witness further testified that they bought Mrs. Propes some clothes and brought her to Mrs. Bosworth's home in Tacoma; that Mrs. Propes wanted Mrs. Bosworth, who is her niece, to file for letters of guardianship. Mrs. Irving was then asked this question:

"Q. What is Mrs. Propes' mental condition? A. She seems to be all right at times; then she will tell something else. She will agree with anyone. You can't say she knows just what she wants. She will agree to anything you say. Q. She does not seem to have any reason of her own? A. No. She keeps forgetting everything."

Mr. Irving described Mrs. Propes, at the time he and his wife went to Yelm, as being dressed just in rags, "no clothing that could be so described." He was then asked:

"Q. From your observation would you say she was competent to handle her own affairs? . . . A. No; I don't believe she would be, or she would not be living under those conditions."

Mrs. Erick Arndt, a grandniece of Mrs. Propes, was asked the following question:

"Q. What can you say about Mrs. Propes' mental condition? A. Well, she is not right; she talks on one subject and then changes her mind to something else. Of course she is not well either. She is crippled in one leg and drags it along. I talked to her for about forty-five minutes at my mother's, and she wanted my mother [Mrs. Bosworth] to be her guardian. Q. Did she request that your mother be appointed as her guardian? A. Yes; she thought that would be fine. She said she felt close to her."

Miss Bird, Thurston county welfare worker, who visited Mrs. Propes just before Mrs. Gage was removed to the hospital in Olympia, and Mrs. Propes was removed to Mrs. Bosworth's home in Tacoma, testified that the two ladies were living in a dirty two room shack which formerly housed stock; that they had four or five vicious dogs; that both ladies were very dirty, the bedding was filthy, and their undergarments were black; that the only food they had was a couple of cans of tomato juice and some salmon; that they had no bread or milk, and the cupboards were bare; that animals would come right into the place where they were living.

Mrs. Bosworth, a niece of Mrs. Propes, testified that Mrs. Propes wanted her to start guardianship proceedings. Mrs. Bosworth was then asked:

"Q. Is she able to handle her own affairs? A. No, I don't think she is; if she had been she would not have been living in the condition that she was."

This witness also testified that Mrs. Propes' memory was not good; that she forgets and is easily influenced.

At the close of the testimony, the court summed up the matter in the following words:

"THE COURT: The situation as it appears to me is this: Here are two old ladies who have been living down here on this ranch where they were utterly unable to take care of themselves and nobody to take care of them; that they lived in filth and squalor, and old people are inclined that way anyhow, and with nobody there except this man Rich, and I haven't quite got him figured out in this picture. . . . Apparently he has a job, and giving him all the best of it, he is in Seattle and only gets there once a week, and these two old women living there. They have not been able to take care of themselves. Everybody interested in them apparently has no selfish purpose at all but feel that something should be done for these old people. I think so too. I think a guardianship should be granted."

Mrs. Gage had been removed from the hospital in Olympia to the house on Trafton street, in Tacoma, and Mrs. Propes, just prior to this action, had also been removed to the Trafton street house. In view of this situation, the court was of the opinion that it was to the best interest of these two old ladies that they be allowed to live together, and was also of the opinion that the same guardian should be appointed for each of them. As stated, the court entered an order in the *Gage* case appointing Mrs. Bosworth guardian of the person and estate of Mrs. Gage, and in the *Propes* case appointing Mrs. Bosworth guardian of the person and estate of Mrs. Propes.

Appellant contends the trial court was not justified in appointing a guardian in this case, and asks us to consider the case of *In re Michelson*, 8 Wn. (2d) 327, 111 P. (2d) 1011, in connection with this contention. We are in entire accord with the holding in the cited case and the statements contained in the quotation from the case by appellant. We are satisfied that in the instant case the court was warranted in concluding that Mrs. Propes was not capable of transacting the ordinary business involved in taking care of her property; that she was not capable, either physically or mentally, of looking after herself, personally, or her property.

We appreciate that it sometimes appears in these cases that old people live under conditions of their own choosing, which are more or less revolting, and still it cannot be said they are incompetent to look after their affairs, but we are convinced in this case, as was the trial court, that the conditions under which Mrs. Propes was living were due to both a physical and mental incompetency to look after her person or her property; that there was no person who had authority to see that this old lady was provided for and her property looked

after; and that it was therefore necessary that a guardian be appointed.

Again we say, based on the record in this case, that we are in entire accord with the conclusions reached by the trial court. We are also satisfied that the court was justified in appointing Mary Jane Bosworth such guardian.

The judgment of the trial court is affirmed.

ROBINSON, C. J., MILLARD, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 122 P. (2d) 458.