[No. 28576.   Department Two.   February 14, 1942.]

*In the Matter of the Guardianship of* ELIZA C. GAGE, *an Incompetent Person.*[1]

[1]Reported in 122 P. (2d) 451.

444

*Earl V. Clifford,* for appellant.

*Stuart H. Elliott,* for respondent.

JEFFERS, J.—This is an appeal by Eliza C. Gage from an order made and entered on July 15, 1941, by the superior court for Pierce county, appointing Mary Jane Bosworth guardian of the person and estate of Eliza C. Gage, an incompetent person. Before considering and discussing the testimony introduced for the purpose of showing that Mrs. Gage was incompetent, there are two assignments of error which we think should be considered.

It is contended by Mrs. Gage that the court erred in adjudging appellant incompetent without visiting her or requiring her to appear in court in person, or affording her the final opportunity to appear in person. While we think it the better practice to have the person present in court, in order that the court may see and observe such person before he is adjudged to be incompetent, we find nothing in the statute which seems to require that this be done. In the instant case, we have a request by Mrs. Gage that she be not required to appear in court in answer to a subpoena to appear on July 8, 1941, the request stating:

"That her reasons for making this request are that she is infirm and aged so as to make it probable that she will not be able to attend at the trial of the above entitled matter."

This written request was signed by Mr. Clifford, attorney for Mrs. Gage, and by Mrs. Gage. We also have a written request filed by Dr. A. B. Heaton, on request of Mr. Clifford, that Mrs. Gage be excused from appearing at the hearing.

Mrs. Gage was at all times represented by Mr. Clifford at the hearing. In view of the circumstances herein described, we are satisfied that no error was committed by the trial court in proceeding to hear the matter without Mrs. Gage being personally present in court.

Appellant cites the case of *In re Wetmore*, 6 Wash. 271, 33 Pac. 615, as sustaining her contention that the court had no jurisdiction to appoint a guardian of her person and estate without her being personally present in court. We think the cited case is distinguishable from the instant case. In the first place, the act under consideration in the cited case contained no provision for bringing the person before the court. Under the present statute, Rem. Rev. Stat., § 1568 [P. C. § 9900], provision is made for service of notice upon the incompetent person. In the cited case, no appearance was made by the one sought to be adjudged incompetent, either personally or by attorney. In the instant case, Mrs. Gage was at all times represented by her attorney, Mr. Clifford. In the instant case, notice was served upon the prosecuting attorney, as required by Rem. Rev. Stat., § 1571 [P. C. § 9903], but the prosecutor did not appear, for the reason that Mrs. Gage was represented by her own attorney, in which case the prosecutor is, by the provisions of § 1571, *supra*, excused from appearing.

It is also claimed the court erred in not affording appellant a hearing on the application for the appointment of a guardian for her, separate from the hearing for the appointment of a guardian for her

sister, Clarinda Propes. There is no question but that appellant was entitled to a separate hearing on the petition for the appointment of a guardian for her person and estate. The trial court recognized this right, and before the hearing commenced, stated:

"THE COURT: Each alleged incompetent is entitled to a separate trial and these cases cannot be consolidated for trial. The testimony in one case can be reintroduced as testimony in the other case. If both cases are ready for trial, we will first take up the case of Caroline B. Propes."

While some of the witnesses testified to the condition of both Mrs. Gage and Mrs. Propes, the court considered the testimony as it applied to the particular case. Different counsel represented the person, who was asking to be appointed guardian of Mrs. Gage, than represented the person asking to be appointed guardian of Mrs. Propes. Separate briefs were filed, and separate orders entered in the respective cases. We are of the opinion the court committed no error, in so far as the manner in which this case was heard is concerned.

All the testimony in this case was introduced by the person seeking to have a guardian appointed for Mrs. Gage. Mr. Clifford was present and cross-examined the witnesses, but offered no proof. On June 16, 1941, the date the petition was filed, Mrs. Gage was seventy-five years of age, and was living with her sister in a house on south Trafton street, in Tacoma. It appears that, up to 1935 at least, Mrs. Gage had lived with her husband in Anacortes. Apparently these people had been in comfortable circumstances, for when Mr. Gage died in 1935, his estate, which was closed in April, 1936, showed property of the value of about twenty thousand dollars, which was distributed to Mrs. Gage. This property consisted of twenty-five or thirty lots

in Anacortes; five acres in Thurston county; property in Pierce county; Home Owner's Loan bonds; postal certificates, one thousand dollars; money in First National Bank of Mount Vernon; mortgages and promissory notes; and contract of one Christensen, of King county, $2,292.

In the objections and answer filed by Mrs. Gage, she states that all the property she now has is about $175 in money, and about five acres of land in Thurston county, of the value of approximately five hundred dollars. She further sets out in the answer that on August 30, 1938, she owned the real estate on Trafton street, where she now resides, but on the above date she deeded it to her son, Everett H. Rich.

While it does not definitely appear from this record, it seems that, about two years before this proceeding was commenced, Mrs. Gage sold her home in Skagit county, and went to live with her sister, Mrs. Propes, on a place belonging to Mrs. Propes near Yelm, in Thurston county, where these old ladies were found by the Thurston county welfare department.

When Mrs. Gage and her sister were visited by the welfare department, about June, 1941, they were living in a two room shack which had formerly been used for stock. The place was dirty, and both the old ladies were very dirty. They had on some old clothes many sizes too large for them, and had gunny sacks wrapped around them. Their faces were dirty, the bedding was filthy, and their undergarments were so dirty it was impossible to tell the color of them. There was no food in the house except a couple of cans of tomato juice and some salmon. This place is about twelve miles from Yelm, and about a quarter of a mile from a neighbor. They had a kettle of corn in the middle of the floor, and the ducks and chickens would come in and eat.

At the time Miss Bird, the welfare worker, visited the old ladies, she found Mrs. Gage in bed, and, upon the recommendation of a doctor, Mrs. Gage was removed to St. Peter's hospital, in Olympia.

Mrs. W. F. Irving, a grandniece of Mrs. Gage, testified that, when she heard Mrs. Gage was in a hospital at Olympia, she, with her husband and her mother, Mrs. Bosworth, went to Yelm; that Mrs. Propes was at the place near Yelm; that Mrs. Bosworth stayed with Mrs. Propes, and Mrs. Irving and her husband went into Olympia to see Mrs. Gage; that Mrs. Gage did not know either Mrs. Irving or her husband. We quote from Mrs. Irving's testimony:

"Q. What would you say about her mental condition? A. Well, she did not know—until after I explained to her, and then a little later on she would ask me who I was and wanted to be taken back to Yelm. Q. Did she carry on an intelligent conversation? A. She would for a while and then she would not be the same; she would talk about something different."

Mr. Irving, who visited Mrs. Gage at the hospital, testified that her mind did not seem to be clear; that she could not remember more than five or ten minutes, and would ask the same question over; that she talked more like a child. This witness also testified to the condition in which the old ladies were living at Yelm, and his testimony was about the same as Miss Bird's.

Bertha Wedding testified that she was a niece of Mrs. Gage, and had last visited her at the home on Trafton street, where Mrs. Gage was living with her sister, Mrs. Propes; that Mrs. Gage did not know her, or know what she was talking about.

Mrs. Bosworth, a niece of Mrs. Gage, testified that Mrs. Gage was forgetful; that she imagined Mrs. Gage was easily influenced. The witness was then asked:

"Q. Does she talk intelligently or carry on a continuous conversation? A. No, she just talks a little bit. Mr. GORDON: Q. Did she remember who you were? A. No, she doesn't remember you. When I went to see her she didn't remember until after I told her; and also when my cousin went to see her she didn't remember her until she told her. Q. You have to tell her who you are before she recognizes you? A. Yes, sir. Mr. ELLIOTT: Q. Each time did you have to tell her? A. Yes, sir."

Mrs. Gage's son, hereinbefore referred to, who apparently works in Seattle, did not appear at the hearing.

There was considerable testimony in addition to that herein specifically referred to, relative to the conditions under which Mrs. Gage had lived for the two years preceding the appointment of a guardian, all of which was considered by the trial court. The trial court, after due consideration, appointed Mrs. Mary Jane Bosworth guardian of the person and estate of Mrs. Gage, and this appeal followed.

█ In addition to the assignments of error referred to in the first part of this opinion, it is claimed the court erred in adjudging the evidence introduced sufficient to establish Mrs. Gage's incompetency, and in appointing Mrs. Bosworth as guardian, without consulting appellant or affording her an opportunity to object.

Appellant has asked that we consider the case of *In re Michelson,* 8 Wn. (2d) 327, 111 P. (2d) 1011, when deciding whether or not the testimony in the instant case is sufficient to establish the incompetency of Mrs. Gage. We have read and considered the *Michelson* case, and we are entirely in accord with what was stated therein. However, we are of the opinion the cited case does not support appellant's contention that

the trial court erred in finding Mrs. Gage was incompetent, based upon the record in this case. We are of the opinion, as was the trial court, that no one connected with this proceeding is attempting to obtain any advantage or benefit, but that the only purpose of the relatives of Mrs. Gage is to see that someone is appointed to look after her and see that she is decently provided for, and also to investigate the situation relative to her property.

While the trial court did not criticize the action of Mrs. Gage's son, it is clearly inferable, from the court's statement made at the close of the case, that the court could not understand the action of the son, who undoubtedly knew of the conditions under which his mother was living. The court was clearly of the opinion that the old lady was not competent to look after her person or her property, and that a guardian should be appointed. After an examination of the record, we are in accord with the judgment of the trial court as to the necessity of such an appointment, and also that Mrs. Bosworth was the proper person to be appointed.

It is impossible to set out more than extracts from the testimony, and because of this it is impossible to give a true picture of the situation. The testimony in the case all came from lay witnesses. However, it is impossible to escape the conclusion that Mrs. Gage has become mentally and physically incompetent to properly look after either herself or her property. This mental affliction may have been brought about in a measure by her weakened physical condition, due to the way she has been living. While the record is far from satisfactory in regard to Mrs. Gage's property, we think, as did the trial court, that this old lady, who in 1936 received property and money of the value of twenty thousand dollars, and who for a period of at least two years since that time apparently lived in

poverty and filth, should have the benefit of an investigation as to what has become of her property. She is clearly incompetent to conduct such an investigation.

We are of the opinion the order of the trial court was right, and that it should be, and it is, hereby affirmed.

. ROBINSON, C. J., MILLARD, BLAKE, and SIMPSON, JJ., concur.

[1]Reported in 122 P. (2d) 454.