[Nos. 38230, 38757.   Department One.   July 7, 1966.]

In the Matter of the Guardianship of RAYMOND A. SPIECKER.
ARTHUR SPIECKER et al., Appellants, v. VELMA N. GOOD,
Respondent.*

*Benson & Atwell, Clifford C. Benson*, and *George R. Stege
III*, for appellants.

*G. B. Chamberlin*, for respondent.

PER CURIAM.—We have here two appeals consolidated for
hearing.

The first appeal is from the refusal of the Superior Court
for Clallam County to remove Velma N. Good, as guardian
of the estate of Raymond A. Spiecker, an incompetent per-
son.  (Order, January 19, 1965)

The second appeal is from an order in the guardianship
proceeding, dated December 27, 1965, awarding compensa-
tion to the guardian and fees to her attorney from the be-
ginning of the guardianship to the date of the order, but
reserving for future consideration the matter of attorney's
fees for defense in the petition for removal of the guardian.

Essential background information is as follows:

Raymond A. Spiecker, now aged 69,[1] owned a 48-acre farm
in Douglas County.  In 1956, he conveyed the farm to his
niece Mrs. Velma N. Good, reserving therein a life estate to
himself.

In May 1960 he moved to Sequim, Washington, where he

*Reported in 416 P.2d 465.

[1] Born, February 5, 1897.

lived for a time in the home of Mrs. Good, and later in a cabin built on her property. He brought with him to Sequim, a check for $21,799.08, from a Wenatchee savings and loan association.

The check was deposited in the Olympic State Bank, May 16, 1960. The money was all drawn out by August 4, 1960; the last withdrawal on that date being $13,899.08, all in cash. The vice-president of the bank tried to persuade Mr. Spiecker to take a cashier's check, but he insisted on cash and carried it out of the bank in a canvas bag. Mrs. Good was with him at the time.

As to what he did with his money between then and July 26, 1963, the date he was adjudged incompetent, the evidence is indeed sketchy. Mrs. Good as the guardian of his estate was able to inventory savings accounts totaling $17,299.87, and a checking account of $325.94, a total of $17,625.81, or $4,173.17 less than the original amount of $21,799.08. Mrs. Good's position on the matter seems to be that it was his money; that he was competent, and it wasn't any concern of hers what he did with it.[2] In October 1963 he was, at the petition of Mrs. Good, committed to Northern State Hospital, where he was at the time of the entry of the orders now before the court for review.[3] We are satisfied that the evidence offered by the three brothers of Raymond Spiecker in support of the allegations of their petition for the removal of Mrs. Good as guardian, fell far short of establishing the exercise of undue influence by Mrs. Good or the misuse by her of the funds of Mr. Spiecker to improve her own property, or that she was not properly preserving the property of the incompetent.

The trial court's order refusing to revoke the letters of

[2]While it is true, it was his money and there had been no formal adjudication of incompetency until 1963, it would seem that a person who drew out of a bank almost $14,000 in cash and handled other large amounts in a rather free-wheeling manner, might be regarded as needing some watchful care.

[3]Counsel for the guardian stated at the hearing in this court (March 21, 1966), that the incompetent had been released from the Veterans' Hospital at American Lake, and that he was living with a private family under their family home plan.

guardianship is affirmed, together with the judgment for costs against the petitioners.

While no showing was made warranting the removal of the guardian, we are frankly concerned with a number of circumstances that do not seem to us to have been satisfactorily explained in the light of the apparent questionable competency of Raymond Spiecker to handle large sums of money for some time prior to the adjudication of incompetency.

On the hearing of the intermediate account, the superior court might well have availed itself of the authority given it by RCW 11.92.050 to have a guardian ad litem appointed to represent the incompetent. An independent investigation might have been of great assistance to the superior court and have resolved some of the matters that concern this court.

Nor do we find anything unreasonable in the fees allowed to the guardian and her attorney, though the court's order might well be clarified as to whether the $500 allowed to the attorney for the guardian includes the $125 which the guardian indicates she has already paid; or whether the court is in effect allowing the attorney a fee of $625 for services prior to the date of the order (December 27, 1965), and exclusive of services rendered in defending the petition to remove the guardian, and the appeal from the order refusing to remove her.

Complaint is made that there was no evidence as to time devoted to the guardianship by the attorney during the 2 years and 5 months, since the appointment of the guardian, July 26, 1963. The guardianship record including the report of the guardian was before the court. This showed cash receipts of $23,996.59 and disbursements of $4,646.27. In addition there were services to which reference was not specifically made, but which are inherent in the report itself, such as securing the transfer to the State of Washington of the $6,500 which the incompetent had deposited out of the state, and the preparation of income tax returns (payment of $822.27 tax reported).

The guardian's fees and the fees of the attorney for

the guardian are largely within the discretion of the superior court. *In re Leslie's Estate,* 137 Wash. 20, 241 Pac. 301 (1925). We find no abuse of discretion.

Both orders appealed from are affirmed.