38 P.3d 396 (2002)
In re the GUARDIANSHIP OF Amanda Rayann KARAN.
Donna Janssen, Guardian of the Estate for Amanda Rayann Karan, a minor, Appellant,
v.
James F. Topliff, and Esposito, Tombari & George, P.S., d.b.a. Esposito, Tombari, George, Topliff & Campbell, P.S., a Washington professional service corporation, Respondents.
No. 19786-7-III.
Court of Appeals of Washington, Division 3, Panel Eight.
January 24, 2002.
*397 Patrick K. Fannin, Attorney at Law, Spokane, for Appellant.
James B. King, Keefe, King & Bowman, Spokane, for Respondents.
SWEENEY, J.
Trask v. Butler[1] establishes a six-point analysis to determine whether a lawyer owes a duty to a nonclient. In this guardianship case, a mother hired a lawyer to help her set up a guardianship for her child's estate following the death of the child's father. The father had designated the child as the beneficiary of his life insurance policy. The lawyer petitioned the court for a guardianship. But the resulting guardianship order neither required a bond for the guardian, nor blocked the account from access in lieu of the bond. The mother depleted the funds. The dispositive issue is whether the lawyer owed the child a duty, and thereby created standing for the child to bring this action for malpractice. We conclude that the lawyer did owe a duty and reverse and remand for trial.

FACTS
Amanda Karan's father died on March 9, 1997, when Amanda was three years old. *398 Amanda was beneficiary of his $50,000 life insurance policy.
Attorney James Topliff petitioned on behalf of Amanda's mother, Angela Schafer, for guardianship of Amanda's estate. On June 17, 1997, a superior court commissioner granted the petition. The order did not require a bond, nor did it require that the funds be placed in a blocked account. Instead, the court ordered Ms. Schafer to establish and manage an account for Amanda's benefit.
In the summer of 1998, Ms. Schafer left Amanda with Donna Janssen. On December 16, 1998, on the recommendation of Amanda's guardian ad litem, a different court commissioner substituted Ms. Janssen as guardian. The court found that Ms. Schafer had breached her fiduciary duty and depleted the trust funds to $15,969.87.
Ms. Janssen subsequently obtained judgments against Ms. Schafer for $34,828.75, and for miscellaneous goods and court costs. She was unable to recover on the judgments.
Ms. Janssen then sued James Topliff, the lawyer, for malpractice. She alleged that Mr. Topliff owed Amanda a duty to make certain that the guardianship order complied with RCW 11.88.100[2] and RCW 11.88.105.[3] Specifically, she claimed that Mr. Topliff breached his duty by failing to ensure that Ms. Schafer either posted a bond or deposited the proceeds in a blocked account as required by statute.
Mr. Topliff moved for summary judgment. The court agreed with Mr. Topliff that his only duty of care was to his client, Ms. Schafer, and dismissed the complaint.

GUARDIANSHIP STATUTE REQUIREMENTS
Washington's guardianship statutes are designed to protect a person of diminished capacity. The guardianship order must provide a meaningful remedy in the event the estate assets are depleted. It does so by requiring the guardian to post a bond. RCW 11.88.100. As an alternative protection for the ward, where posting a bond would work a hardship, the statute allows the funds to be deposited in a bank or other secure account, subject to withdrawal only by court ordera blocked account. RCW 11.88.105.
Compliance with these provisions is a condition precedent to the appointment of a guardian whenever the estate is worth over $3,000. RCW 11.88.100; In re Guardianship of Whitish, 47 Wash.2d 652, 658, 289 P.2d 340 (1955). Failure to post bond deprives the nominal guardian of the legal authority to assume the duties of the office. Id. at 657, 289 P.2d 340.
Here, the guardianship order did not require either a bond or blocked account.
STANDARD OF REVIEW
In reviewing a summary judgment, we undertake the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. CR 56(c); Ahmann-Yamane, L.L.C. v. Tabler, 105 Wash.App. 103, 108, 19 P.3d 436 (citing Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994)), review denied, 144 Wash.2d 1011 (2001). The inquiry is whether any genuine issue exists as to any material fact, and whether the moving party is entitled to judgment as a matter of law. CR 56(c); Bohn v. Cody, 119 Wash.2d 357, 362, 832 P.2d 71 (1992). Every reasonable inference is indulged in favor of the nonmoving party and all doubts are resolved in its favor. Id.
STANDING
The general rule is that only an attorney's client may file a claim for legal malpractice. Trask v. Butler, 123 Wash.2d 835, 840, 872 P.2d 1080 (1994). But an attorney may owe a nonclient a duty even in the absence of this privity. Stangland v. Brock, 109 Wash.2d 675, 680, 747 P.2d 464 (1987). When the facts underlying the alleged attorney-client relationship are disputed, the fact-finder makes the determination after weighing the evidence and the credibility of the witnesses. Stiley v. Block, 130 Wash.2d 486, *399 502, 925 P.2d 194 (1996). Here, the facts are not in dispute. The only question is one of standing. And that is a question of law to be decided by us. Trask, 123 Wash.2d at 842-43, 872 P.2d 1080; Wolstein v. Yorkshire Ins. Co., 97 Wash.App. 201, 206, 985 P.2d 400 (1999).
To determine whether a lawyer owes a duty to a nonclient which then creates standing to sue for malpractice, Washington applies a six-element test. Trask, 123 Wash.2d at 842, 872 P.2d 1080. There is an older, third party beneficiary test. There, the court asks whether the plaintiff is an intended beneficiary of the contract for services. Id. The first element of the multi-factor test incorporates the third party beneficiary test. We do not, therefore, address it separately here, even though Ms. Janssen raises it as a separate issue.

TRASK TEST
In the absence of an express lawyer-client relationship, Washington courts use a multi-factor balancing test set forth in Trask.[4] To establish whether the lawyer owes the plaintiff a duty of care in a particular transaction, the court must determine:
1. The extent to which the transaction was intended to benefit the plaintiff;
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury;
5. The policy of preventing future harm; and
6. The extent to which the profession would be unduly burdened by a finding of liability.
Trask, 123 Wash.2d at 843, 872 P.2d 1080. The threshold question is whether the nonclient plaintiff is an intended beneficiary of the transaction. If not, there is no further inquiry. Id.
TRASK
In Trask, the personal representative of the parents' estate was one of two heirs. The heirs were brother and sister, who from the outset were legal adversaries. When the father died, the personal representative immediately hired a lawyer. Brother and sister litigated title to a real estate parcel which had been quitclaimed to the brother by the father without the surviving mother's signature. They also litigated whether the brother had encroached on estate lands from his neighboring property. To meet the mother's medical expenses, the personal representative sold the home at a bargain price, in part because of the litigation. Trask, 123 Wash.2d at 837-38, 872 P.2d 1080.
After the mother died, the personal representative acceded to all the brother's demands in exchange for his agreement not to sue her for breach of her duty as personal representative. The brother instead sued the personal representative's lawyer for malpractice. Id. at 838-39, 872 P.2d 1080. He alleged the lawyer negligently advised the personal representative to file the quiet title action against the quitclaimed property. And this had the effect of reducing the property's value. He claimed that the lawyer owed him a duty of care as a beneficiary of the estate. Id. at 839, 872 P.2d 1080.
The Trask court weighed the six factors and concluded that the lawyer for the personal representative of a probated estate owes no duty to beneficiaries for advice given to the personal representative which results in loss of the value to the estate. The court held that, in a probate situation, the relationship between the lawyer and personal representative is not intended to benefit the estate beneficiaries. The court found that the brother was at best an incidental beneficiary of the lawyer's services. Id. at 845, 872 P.2d 1080. The court determined that its holding would not create future harm to estate beneficiaries, who have recourse to other legal remedies for breach of duty by a personal representative. The profession would be greatly burdened by a finding of a duty on these facts because lawyers cannot fulfill conflicting *400 duties to parties whose interests are adversarial.
Here, the court correctly concluded that Trask is the controlling authority. But the court then went on to conclude that, like the beneficiary in Trask, Amanda was merely an "incidental" rather than the intended beneficiary, of the lawyer's services. The court also recited from Trask, that "there is the ability for the estate heirs to bring a direct cause of action against the PR for the already-designated breach of fiduciary duties ." Report of Proceedings at 13. The court also found that a potential for conflict of interest precluded Mr. Topliff from representing both mother and child. Consequently, the court ruled that Mr. Topliff owed no duty to anyone other than the guardian, his sole client.
Mr. Topliff argues that Trask's holding must be applied as a bright-line rule. In fact, both parties ask for a bright-line rule that a guardian's lawyer either does or does not owe a duty of care to the ward. But there is no bright-line rule; nor should there be. The lesson of Trask is that each case must be evaluated on its own facts.
Ms. Janssen relies on In re Disciplinary Proceeding of Fraser,[5] for a bright-line rule that the lawyer for the guardian of an infant ward automatically assumes a duty to the ward. But Fraser is also distinguishable on its facts. There, the guardian engaged the lawyer to manage the estate, then sued him when he refused to turn over control of the funds. The court ruled that, on those facts, the lawyer's conflicting duty to the ward took precedence.
Trask is factually distinguishable. The Trask case resolved a dispute between an adult, competent beneficiary of a will who was in an adversarial relationship with another adult beneficiary. The second beneficiary was also both the personal representative of the deceased father's estate and attorney-in-fact for the surviving mother. Trask, 123 Wash.2d at 838, 872 P.2d 1080. And the lawsuit against the lawyer was over day-to-day judgment calls in managing the estate.
By contrast, here we have: (1) a legally incompetent infant ward, (2) a non-adversarial relationship, and (3) legal services solely consisting of setting up the guardianship.
The Trask court recognized that not every estate beneficiary is "incidental" to every transaction between every estate administrator and his or her lawyer. For instance, in the matter of a botched will, third-party intended beneficiaries may have a cause of action in negligence against the drafting attorney under the multi-factor balancing test. Trask, 123 Wash.2d at 843, 872 P.2d 1080 (citing Stangland, 109 Wash.2d at 681, 747 P.2d 464).
Citing Fraser,[6] Arizona does apply a bright-line rule that an attorney who undertakes to represent the guardian of an incompetent thereby automatically assumes a relationship with the ward. Fickett v. Superior Court, 27 Ariz.App. 793, 558 P.2d 988, 990 (1976). The Trask factors will no doubt frequently lead to the same result in Washington. But we decline to apply a bright-line rule imposing a duty on a lawyer.
APPLICATION OF THE TRASK FACTORS
Here, the Trask factors establish a duty owed by Mr. Topliff to Amanda.
1. Intended Beneficiary. The primary reason to establish a guardianship is to preserve the ward's property for his or her own use. It is not for the benefit of others. In re Guardianship of Michelson, 8 Wash.2d 327, 335, 111 P.2d 1011 (1941) (guardianship held unnecessary). Therefore, the attorney-client relationship between Mr. Topliff and Ms. Schafer was established to benefit Amanda.
The remaining Trask factors also support a finding of duty.
2. Foreseeability of Harm. It is foreseeable that failure to put in place the statutory safeguards for the protection of the estate will leave the ward vulnerable to the kind of *401 losses Amanda incurred. This is why the Legislature required the safeguards.
3. Certainty Plaintiff Suffered Injury. It is not disputed that Amanda suffered harm. She lost three-quarters of her estate. And she had no meaningful recourse against the judgment-proof guardian.
4. Connection between Lawyer's Conduct and Injury. If established, the connection between the alleged conduct and the injury is direct. The lawyer bypassed the statutory safeguards that protect a ward from a guardian's squandering the funds.
5. Future Harm. In matters involving the welfare of minors and other legally incompetent individuals, the courts assume a particular duty to protect the interests of the ward. Durham v. Moe, 80 Wash.App. 88, 91, 906 P.2d 986 (1995). Policy considerations favor finding a duty in the interests of preventing future harm. In re Guardianship of Ivarsson, 60 Wash.2d 733, 738, 375 P.2d 509 (1962).
The Trask court found that a cause of action against the personal representative's lawyer was not necessary because the probated estate's beneficiary had an independent cause of action against the personal representative for breach of fiduciary duty. Trask, 123 Wash.2d at 843-44, 872 P.2d 1080. Here, however, the conditions precedent for establishing a guardianshipbond or blocked accountwere not established.
Moreover, direct action for breach against the guardian is likely to be an empty remedy absent a bond. In contrast to Trask, the injury to the ward in this case is precisely that she was left without any meaningful remedy. The remedy would have been secured by the statutorily required bond, or rendered unnecessary by a properly blocked account.
The Trask court based its decision in part on the premise that a beneficiary can take an active role in estate matters by retaining an attorney or communicating with the personal representative. Id. at 844, 872 P.2d 1080. But a three-year-old cannot do this.
6. Burden on the Profession. Finally, Trask notes that imposing liability in that case would create an impossible ethical conflict for lawyers, because the interests of beneficiaries and the personal representative of a deceased's estate are frequently at odds. The parties are legal adversaries. Id. But, again, that is not the case here. A potential conflict of interest arises when the lawyer simultaneously represents clients with opposing interests. Kidney Ass'n of Or., Inc. v. Ferguson, 315 Or. 135, 145, 843 P.2d 442 (1992). In contrast to Trask, the legitimate interests of the guardian here are inseparable from those of the ward.
The profession will not be unduly burdened by finding a duty in this case, because the applicable law mandates either a bond or a blocked account. The obligation to protect the interests of wards in circumstances such as this does not put lawyers in an ethical bind. To require them to inform a would-be guardian that Washington statutes mandate either a bond or a blocked account is not a burden on the profession.
We need not write new law finding a "presumptive" duty, or duty as a matter of law, as requested by Ms. Janssen. The considerations Ms. Janssen urges can be comprehensively argued under the Trask analysis.
We have applied the Trask factors. In doing so, we conclude that Mr. Topliff owed a duty of care to the ward, Amanda Karan.

PROFESSIONAL NEGLIGENCE
Once a relationship giving rise to a duty is established, the elements of a malpractice claim are the same as for any other negligence action. Stangland, 109 Wash.2d at 679, 747 P.2d 464. Those elements are: breach (Ahmann-Yamane, 105 Wash.App. at 108, 19 P.3d 436); proximate cause (Bowman v. Two, 104 Wash.2d 181, 186, 704 P.2d 140 (1985)); and damages (Matson v. Weidenkopf, 101 Wash.App. 472, 484, 3 P.3d 805 (2000)).
Questions of breach, proximate cause, or damages will be questions of fact on remand. We reverse and remand for trial on the remaining elements of negligence.
We concur: KURTZ, C.J., and BROWN, J.
NOTES
[1] 123 Wash.2d 835, 872 P.2d 1080 (1994).
[2] A guardian must be sworn and post bond.
[3] The court may dispense with a bond if the funds are in a blocked account.
[4] 123 Wash.2d at 843, 872 P.2d 1080.
[5] 83 Wash.2d 884, 897, 523 P.2d 921 (1974), overruled on other grounds by In re Disciplinary Proceeding of Boelter, 139 Wash.2d 81, 985 P.2d 328 (1999).
[6] In re Disciplinary Proceeding of Fraser, 83 Wash.2d 884, 523 P.2d 921 (1974), overruled on other grounds by In re Disciplinary Proceeding of Boelter, 139 Wash.2d 81, 985 P.2d 328 (1999).