61 P.3d 1214 (2003)
The ESTATE OF Katherine M. TREADWELL, by Gerald W. NEIL, Administrator With Will Annexed, Appellant,
v.
Kathleen M.S. WRIGHT and "John Doe" Wright, individually and as wife and husband and the marital community composed thereof, Respondents.
The Estate of Katherine M. Treadwell, by Gerald W. Neil, Administrator With Will Annexed, Plaintiff,
v.
Bank of America, sucessor in interest to SeaFirst Bank, a financial institution doing business in the State of Washington, Defendant.
No. 50274-3-I.
Court of Appeals of Washington, Division 1.
January 27, 2003.
*1215 Robert B. Nettleton, Tacoma, WA, for Appellant.
Scott M. Barbara, Seattle, WA, for Respondent.
APPELWICK, J.
A guardian depleted the accounts of an incapacitated ward. The ward's estate sued the attorney hired by the ward's guardian to establish a guardianship for breach of duty. The alleged breach of duty was the attorney's failure to fully comply with the statutes requiring that prior to the inception of the guardianship a bond or bond agreements blocking access to unbonded funds absent a court order be in place. The attorney argued that she had no duty to the incapacitated ward because the ward was not her client. The trial court granted summary judgment to the attorney, finding no duty to the ward. Reconsideration was sought based on a recent decision in In re Guardianship of Karan, 110 Wash.App. 76, 38 P.3d 396 (2002), but was denied. The Estate appeals. We reverse and remand for trial.

FACTS
Kathleen M.S. Wright (Wright) is an attorney licensed to practice law in Washington State.[1] In June 1997, Linda Morrison (Morrison) retained Wright to commence a guardianship proceeding for Morrison's great-aunt, Katherine M. Treadwell (Treadwell). On June 17, 1997, Wright appeared before a court commissioner and presented a petition for "Appointment of Guardian of Person." The petition asserted that Treadwell: (1) was over 90 years old; (2) was a victim of potential physical and financial abuse; (3) was unable to protect herself; (4) was unable to manage her estate and person; and (5) suffered from memory problems.
Simultaneous with these proceedings, the court appointed attorney Randy Boyer from the court's guardian ad litem register to serve as guardian ad litem for Treadwell. Boyer's findings corroborated the assertions Wright had outlined in her June 17, 1997 verified petition. In his guardian ad litem report, Boyer observed that "Mrs. Treadwell suffers from very impaired recent memory and moderately severe impairment as to orientation of time," and that Treadwell needed "full time assistance with all financial matters and to meet her daily needs." Boyer also estimated that Treadwell had approximately $225,000 in assets. He recommended a $30,000 bond, and that funds in excess of $30,000 be in blocked accounts. Wright was provided with a copy of Boyer's report.
On August 26, 1997, a court commissioner signed an order appointing a guardian for Treadwell. The draft of the order that Wright submitted to the court included a *1216 provision requiring a $30,000 bond, but not a provision stipulating that assets in excess of $30,000 be maintained in blocked accounts. The court added a provision requiring blocking agreements. The court interlineated on the order that those agreements were set for review in 30 days, but was silent as to whether the letters of guardianship were final before the blocking agreements were in place.
The court clerk issued letters of guardianship on September 16, 1997, with a special instruction sheet to Morrison. Wright forwarded the letters of guardianship and instruction sheets to Morrison on September 22, 1997. Wright included a letter outlining Morrison's responsibilities as a guardian and enclosed copies of Washington statutes detailing Morrison's duties. Wright also included a receipt for blocked account form, explaining to Morrison, "I will prepare this for a particular institution once you have determined what the assets are and how they will be held. All funds in excess of $30,000 must be held in a blocked account."
Shortly thereafter, Morrison stopped contacting Wright, and Wright's attempts to contact Morrison were unsuccessful. Wright's last contact with Morrison was in January 1998. On June 1, 1999, Wright filed a notice of intent to withdraw, effective June 21, 1999.
Treadwell died on November 17, 1999. Treadwell's estate (the Estate) was unable to recover from Morrison, and began legal proceedings against Wright in June 2000. On November 30, 2001, Wright obtained summary judgment dismissing the Estate's claim on the grounds that she owed Treadwell no duty. Shortly after this court's decision in Karan, 110 Wash.App. at 76, 38 P.3d 396, the Estate filed a CR 60(b) motion to vacate the summary dismissal entered in favor of Wright. That motion was denied. The Estate appeals the orders granting Wright summary judgment and denying the Estate's motion to vacate.

ANALYSIS

I. An Attorney's Duty to a Guardianship
Whether Wright owed a duty to Treadwell under RCW 11.88.100 and .105, is a question of law that we review de novo. Rasmussen v. Bendotti, 107 Wash.App. 947, 955, 29 P.3d 56 (2001). The relevant test was discussed in Karan:
The general rule is that only an attorney's client may file a claim for legal malpractice. Trask v. Butler, 123 Wash.2d 835, 840, 872 P.2d 1080 (1994). But an attorney may owe a nonclient a duty even in the absence of this privity. Stangland v. Brock, 109 Wash.2d 675, 680, 747 P.2d 464 (1987)....
To determine whether a lawyer owes a duty to a nonclient which then creates standing to sue for malpractice, Washington applies a six-element test. Trask, 123 Wash.2d at 842, 872 P.2d 1080.
. . . .
To establish whether the lawyer owes the plaintiff a duty of care in a particular transaction, the court must determine:
1. The extent to which the transaction was intended to benefit the plaintiff;
2. The foreseeability of harm to the plaintiff;
3. The degree of certainty that the plaintiff suffered injury;
4. The closeness of the connection between the defendant's conduct and the injury;
5. The policy of preventing future harm; and
6. The extent to which the profession would be unduly burdened by a finding of liability.

Trask, 123 Wash.2d at 843, 872 P.2d 1080. The threshold question is whether the nonclient plaintiff is an intended beneficiary of the transaction. If not, there is no further inquiry.
Karan, 110 Wash.App. at 81-82, 38 P.3d 396.
Division III of the Court of Appeals held in Karan that the attorney of a guardian does owe a duty to the ward. 110 Wash.App. at 86, 38 P.3d 396. In Karan, an attorney had been hired by the mother of a minor to create a guardianship for the minor daughter. The attorney failed to include in an order he drafted, as mandated by RCW 11.88.100 and .105, provisions for either a *1217 bond or blocked accounts. Karan, 110 Wash. App. at 79, 38 P.3d 396. Subsequently, a guardian ad litem was appointed for the minor. The guardian ad litem discovered that the mother, while serving as guardian, had depleted her daughter's funds. The guardian ad litem was unable to recover on judgments against the mother for the funds. Karan, 110 Wash.App. at 79, 38 P.3d 396. On behalf of the minor, the guardian ad litem then sued the attorney for malpractice, alleging that the attorney had a duty to make certain the guardianship order complied with RCW 11.88.100 and .105. The trial court held that the attorney did not owe the minor a duty because she was not his client. Karan, 110 Wash.App. at 80, 38 P.3d 396.
The court applied the Trask factors to analyze whether the guardian's attorney owed the ward a duty to comply with RCW 11.88.100 and .105. The court concluded such a duty did exist.
The threshold determination under Trask was whether the ward was an intended beneficiary of the transaction, i.e., the creation of the guardianship. The court distinguished the incidental beneficiary in Trask from the intended beneficiary in Karan:

Trask is factually distinguishable. The Trask case resolved a dispute between an adult, competent beneficiary of a will who was in an adversarial relationship with another adult beneficiary. The second beneficiary was also both the personal representative of the deceased father's estate and attorney-in-fact for the surviving mother. Trask, 123 Wash.2d at 838, 872 P.2d 1080. And the lawsuit against the lawyer was over day-to-day judgment calls in managing the estate.
By contrast, here we have: (1) a legally incompetent infant ward, (2) a non-adversarial relationship, and (3) legal services solely consisting of setting up the guardianship.
. . . .
1. Intended Beneficiary. The primary reason to establish a guardianship is to preserve the ward's property for his or her own use. It is not for the benefit of others. In re Guardianship of Michelson, 8 Wash.2d 327, 335, 111 P.2d 1011 (1941) (guardianship held unnecessary).
Karan, 110 Wash.App. at 84-85, 38 P.3d 396. The court found that even though a ward may oppose the appointment of a guardian, the protection of the property of a ward in the creation of the guardianship is an interest common to the ward, the guardian, and the guardian's attorney. Thus, the court found that the ward was an intended beneficiary.
The only factual difference in the case before us as to this factor of the Trask test is that Treadwell was an incompetent adult rather than an incompetent minor. We see no basis for this distinction to lead to a different result. Here, as in Karan, the incompetence of the ward is the key fact. Treadwell was the intended beneficiary of the guardianship Wright established because she was (1) a legally incompetent ward, (2) in a non-adversarial relationship with Morrison, and (3) because Wright's legal services for Morrison solely consisted of setting up Treadwell's guardianship.
The policy analysis of Trask factors 5 and 6 applied in Karan, applies equally in this case:
5. Future Harm. In matters involving the welfare of minors and other legally incompetent individuals, the courts assume a particular duty to protect the interests of the ward. Durham v. Moe, 80 Wash.App. 88, 91, 906 P.2d 986 (1995). Policy considerations favor finding a duty in the interests of preventing future harm. In re Guardianship of Ivarsson, 60 Wash.2d 733, 738, 375 P.2d 509 (1962).
The Trask court found that a cause of action against the personal representative's lawyer was not necessary because the probated estate's beneficiary had an independent cause of action against the personal representative for breach of fiduciary duty. Trask, 123 Wash.2d at 843-44, 872 P.2d 1080. Here, however, the conditions precedent for establishing a guardianshipbond or blocked accountwere not established.
Moreover, direct action for breach against the guardian is likely to be an empty remedy absent a bond. In contrast *1218 to Trask, the injury to the ward in this case is precisely that she was left without any meaningful remedy. The remedy would have been secured by the statutorily required bond, or rendered unnecessary by a properly blocked account.
. . . .
In contrast to Trask, the legitimate interests of the guardian here are inseparable from those of the ward.
The profession will not be unduly burdened by finding a duty in this case because the applicable law mandates either a bond or a blocked account. The obligation to protect the interests of wards in a circumstance such as this does not put lawyers in an ethical bind.
Karan, 110 Wash.App. at 85-86, 38 P.3d 396.
In Karan, the alleged malpractice was failure to provide for a bond or blocked account. Here, the alleged malpractice was failure to provide for adequate bond and/or blocked accounts before issuing the order appointing the guardian. In each case, the guardian's attorney is alleged to have violated the requirements of RCW 11.88.100 and .105. In Karan, the allegation is total failure to protect assets. Here, the allegation is partial failure to protect assets. The difference is not one of kind, but one of degree.
The analysis of Trask factors 2 and 4 also apply equally here:
2. Foreseeability of Harm. It is foreseeable that failure to put in place the statutory safeguards for the protection of the estate will leave the ward vulnerable to the kind of losses Amanda incurred. This is why the Legislature required the safeguards.
. . . .
4. Connection between Lawyer's Conduct and Injury. If established, the connection between the alleged conduct and the injury is direct. The lawyer bypassed the statutory safeguards that protect a ward from a guardian's squandering the funds.
Karan, 110 Wash.App. at 85, 38 P.3d 396.
The last factor in the Trask analysis is the certainty that the plaintiff suffered injury.[2] Actual loss was not disputed in Karan and is not disputed here.
We conclude that a guardian's attorney owes an incompetent ward a duty to establish the guardianship consistent with the requirements of RCW 11.88.100 and .105.
The court in Karan declined to create a bright-line rule that an attorney who undertakes to represent the guardian of an incompetent thereby automatically assumes a relationship with the ward. Karan, 110 Wash. App. at 83, 38 P.3d 396. Likewise, we do not hold that a guardian's attorney owes a duty to the ward for all purposes or for all transactions during the pendency of the guardianship. Rather, the trial court should apply the Trask test and determine whether such a duty exists as each type of transaction is put before it. As to the question before us, the trial court need not undertake a Trask analysis. If Karan left any doubt, we intend not to. RCW 11.88.100 and .105 impose duties on the attorney for the guardian that are owed to the incompetent ward.
The summary judgment finding that Wright owed no duty to Treadwell was error as a matter of law.
II. Scope of the Duty with Respect to RCW 11.88.100 and .105
"The interpretation and construction of a statute is a question of law that an appellate court reviews de novo. In conducting such a review, the court construes a statute according to its plain language and gives effect to the legislative intent." Christenson v. McDuffy, 93 Wash.App. 177, 179-80, 968 P.2d 18 (1998).
The Estate argues that the trial court erred as a matter of law "by not recognizing that the bonding and blocking orders that Wright entered in the Treadwell guardianship failed to comply with the law." More specifically, the Estate maintains that Wright *1219 failed to follow RCW 11.88.100 and .105. Wright argues that it was not incumbent upon her to ensure that the amount of bond adequately protected Treadwell's assets. Rather, she maintains, RCW 11.88.100 confers upon the trial court the discretion to set the amount of a bond.
RCW 11.88.100 states in relevant part:

Before letters of guardianship are issued, each guardian or limited guardian shall take and subscribe an oath and, unless dispensed with by order of the court as provided in RCW 11.88.105, file a bond, with sureties to be approved by the court,... taking into account the character of the assets on hand or anticipated and the income to be received and disbursements to be made....
(Emphasis added). RCW 11.88.105 states:
In cases where all or a portion of the estate consisting of cash or securities has been placed in possession of savings and loan associations or banks, trust companies, escrow corporations, or other corporations approved by the court and if a verified receipt signed by the custodian of the funds is filed by the guardian or limited guardian in court stating that such corporations hold the cash or securities subject to order of court, the court may in its discretion dispense with the bond or reduce the amount of the bond by the amount of such deposits.
The purpose of these statutes is to protect the incompetent ward's property. Karan, 110 Wash.App. at 85, 38 P.3d 396 (citing In re Guardianship of Michelson, 8 Wash.2d 327, 335, 111 P.2d 1011 (1941)). "Unless a bond is filed, the ward and [ward's] creditors have no protection in the event of the defalcation of the guardian." In re Guardianship of Whitish, 47 Wash.2d 652, 656, 289 P.2d 340 (1955). Before a guardianship is effective, and before guardianship letters are issued, adequate bond must be in place. RCW 11.88.100 and .105.
RCW 11.88.100 makes two exceptions to the bond requirement. The first is exemption of small estates under $3,000. That is of no interest in this proceeding. The second exception is for reduction in the amount of the bond as authorized under RCW 11.88.105. That section allows the court to reduce the amount of the bond, but only for cash and securities. A reduction in the bond is discretionary, and under RCW 11.88.105 may be considered when those assets are placed with certain named entities and subject to release only by order of the court. The allowable reduction in the amount of the bond is limited to the amount held in these blocked accounts. Where the cash and securities held in these accounts represent all of the estate's assets, the entire bond may be dispensed with.
Because a blocking agreement is a basis for reduction of the bond, it is a substitute for a bond. It must be in place before a reduced bond may be executed. Under the plain language of RCW 11.88 .100 and .105, letters of guardianship must not be issued before the cash or securities of the ward are fully covered by a bond or blocking agreements or a combination of the two.[3]
III. CR 60(b)(11) Motion to Vacate
A trial court's decision to grant or deny a motion to vacate under CR 60(b) will not be overturned on appeal absent an abuse of discretion. Lindgren v. Lindgren, 58 Wash.App. 588, 594-95, 794 P.2d 526 (1990), review denied, 116 Wash.2d 1009, 805 P.2d 813 (1991). Discretion is abused if it is exercised on untenable grounds for untenable reasons. In re Marriage of Tang, 57 Wash. App. 648, 653, 789 P.2d 118 (1990).
The Estate alleges that the trial court abused its discretion when it denied their motion to vacate the order granting Wright summary judgment on the issue of whether she owed Treadwell a duty. Specifically, the Estate maintains that Karan represented a change in the controlling law. Wright argued in the alternative, both at reconsideration and again on appeal, that she had no duty under Karan or that she had satisfied that duty.
*1220 Wright argues that even if the Karan analysis applied and she owed a duty to Treadwell, she properly discharged that duty. Wright maintains that she informed the guardian of the need for a bond and blocked accounts, and that providing that information to the guardian discharged her duty under Karan. Wright bases her argument on the language of Karan:
The profession will not be unduly burdened by finding a duty in this case because the applicable law mandates either a bond or a blocked account. The obligation to protect the interests of wards in a circumstance such as this does not put lawyers in an ethical bind. To require them to inform a would-be guardian that Washington statutes mandate either a bond or a blocked account is not a burden on the profession.
Karan, 110 Wash.App. at 86, 38 P.3d 396. This language, however, is not an interpretation of the duty under the statute, nor a holding in Karan. Rather, RCW 11.88.100 and .105 already impose substantive requirements on the insurance of guardianship orders. Wright interprets Karan as implying that all an attorney must do is inform the guardian of the need for a bond and/or blocking agreements. Surely, the guardian does not then have the authority to ignore the statutory requirement. Nor may an attorney ignore the statutory requirement.
Wright further argues that her order and her instructions to the guardian satisfied the requirements of the statute. The record is clear that Wright presented an order requiring a bond of $30,000. The guardian ad litem had recommended that the balance of the $225,000 cash or securities above $30,000 be held in blocked accounts. That provision was not in the order Wright drafted. Rather, it was added by the court commissioner. It is also clear from the record that blocked accounts covering the balance of the $225,000 were not put in place before the order gave the guardian authority over the funds. As discussed above, the statute requires more. Wright's arguments to this court that she discharged her duty under RCW 11.88.100 and .105 and Karan are not well taken.
Under CR 60(b)(11), the court may relieve a party or his or her legal representative from a final judgment, order, or proceeding for "[a]ny ... reason justifying relief from the operation of the judgment." CR 60(b)(11). The trial court was presented with two bases for denying reconsideration. We cannot tell which basis the trial court relied upon. We consider each basis in turn.
The first basis presented was that Wright owed no duty under Karan. We hold that such a duty was owed to Treadwell as a matter of law. Refusal to reconsider on this basis is an abuse of discretion.
The second basis presented was that Wright complied with the duty established in Karan. However, the only issue in the original summary judgment was the question of duty. Wright's argument amounts to a substitute basis for summary judgment, which was not a tenable basis for the court to deny reconsideration. Further, even if this alternative issue had been properly before the court, such a conclusion based on the record would have been an error of law. Either way, an abuse of discretion results if this is the basis for the denial of reconsideration.
We conclude that the trial court abused its discretion when it denied the Estate's motion to vacate under CR 60(b)(11).
Accordingly, we reverse and remand for trial.
BECKER, C.J., and COX, J., concur.
NOTES
[1] "John Doe" Wright is Katherine M.S. Wright's husband and the Estate makes no allegations against him personally, only as part of the marital community.
[2] This element is certainly an element of a negligence claim, but usually not part of a duty determination. The Trask test seems to compile the elements of a malpractice claim by a nonclient duty, foreseeability, injury in fact, causation, deterrence/prevention and burden balancing, and label them a test for duty.
[3] We do not address whether the court has discretion as to the amount of the bond required under RCW 11.88.100 for assets other than cash and securities. This appeal only addresses cash and securities.