[Nos. 34132-8-II; 34542-1-II. Division Two. January 30, 2007.]

*In the Matter of the Guardianship of* MICHELLE MCKEAN ET AL.

*John P. O'Connor,* for appellant.

*John H. Hertog, Jr., Richard L. Furman, Jr.,* and *Corey T. Denevan* (of *Hertog & Coster, PLLC*) and *Robin H. Balsam* (of *Balsam McNallen, LLP*), for respondent.

¶1 ARMSTRONG, J. — Michael McKean, on behalf of his daughters Morgan and Michelle McKean, appeals the trial court's orders and judgment directing his daughters' estates to pay fees ·and costs that the guardian and its attorneys incurred in identifying, verifying, and marshaling the girls' trust and nontrust assets. Specifically, he argues that the trial court breached its duty to protect Morgan's and Michelle's estates when it authorized the guardian to use most of Morgan's and Michelle's nontrust guardianship assets to pay the fees and costs. In addition, Michael argues that the trial court erred in assessing a portion of the fees and costs against him. We agree with Michael that the court erred in its method of apportioning fees between the guardianship and him. Accordingly, we vacate the fees and costs award and remand to the trial court for further consideration of how it should apportion fees and costs.

## FACTS

¶2 Michael McKean is single and has two daughters: Morgan, age 10, and Michelle, age 17. Connie (Hodges) McKean is Morgan's mother; Laura McKean is Michelle's mother.

¶3 In Michael and Connie's dissolution decree, the court appointed Commencement Bay Guardianship Services (CBGS) as trustee of Morgan's and Michelle's trust assets. During those proceedings, the court ruled that both Michael and Connie had practiced deceit with respect to their community and separate assets. It found that (1) Connie McKean had misappropriated Michelle's separate funds; (2) the trustee of the irrevocable trust of Michael Allison McKean's children, a trust established for both Morgan's and Michelle's benefit, had not provided a single accounting; and (3) no one had ever properly managed or maintained the trust assets. Accordingly, the court appointed CBGS as the successor trustee of the irrevocable trust of Michael Allison McKean's children.

¶4 CBGS then petitioned for the appointment of a limited guardian to manage Morgan's and Michelle's individual nontrust assets and to monitor their beneficial interests in trust assets. In March 2004, the court appointed Guardianship Services of the South Sound (GSSS) as the guardian of Morgan's and Michelle's estates.[1]

¶5 The court ordered GSSS to monitor Morgan's and Michelle's beneficial interests in several trusts and in the

> funds from the estate of Patricia Mandich[2] by requesting and reviewing complete trust, custodial account, and estate accountings, identifying assets of the respective trusts, custodial accounts, and the Patricia Mandich estate, collecting assets, marshaling [the girls' assets or those assets in which they have] a beneficial interest, and ensuring that the fiduciary responsibilities owed [Morgan and Michelle] as trust beneficiar[ies], custodial account beneficiar[ies], and as estate beneficiar[ies] are properly carried out.

Clerk's Papers (CP) at 12-13. The court granted GSSS authority "to pursue the recovery of any trust, custodial account, or estate assets that have been transferred, withdrawn, dissipated or otherwise disposed of by any custodian (or agent of [that] custodian) of the assets of the respective trusts, accounts, or estate[s]." CP at 13.

¶6 The court also gave GSSS the power to "take other legal action, with [the court's approval], as necessary to protect" Morgan's and Michelle's beneficial interests. CP at 6. And the court authorized GSSS to "make expenditures for . . . monitoring [Morgan's and Michelle's] assets . . . or interests . . . and recovering any asset that may have been concealed, embezzled, conveyed, or disposed of." CP at 6. Finally, the order authorized GSSS to hire Hertog & Coster, PLLC, "for necessary legal advice and representation in

---

[1] Michael appealed the trial court's decision to appoint GSSS as a limited guardian. Holding that a limited guardianship for Morgan's and Michelle's estates was both reasonable and necessary, we affirmed the order appointing GSSS. *In re Guardianship of McKean*, noted at 126 Wn. App. 1028, 2005 Wash. App. LEXIS 452.

[2] Patricia Mandich, who is now deceased, was Michael's mother and Morgan's and Michelle's grandmother.

this matter and other matters related to [GSSS's] powers, duties and responsibilities" in this case. CP at 17.

¶7 In its order on GSSS's annual guardian's report, the court found that GSSS had properly titled Morgan's and Michelle's nontrust assets, placed blocks on those accounts, and contacted the Internal Revenue Service for "1099" statements reporting the girls' income dating back to 1999. GSSS investigated, verified, and reported to the court regarding all of Morgan's and Michelle's assets, both trust and nontrust, and discovered outstanding liabilities against Morgan's and Michelle's assets. GSSS obtained a $10,000 cashier's check from Connie for money she took from Michelle. GSSS also reported that it had discovered claims that Morgan and Michelle had against Environmental Fuel Development Corporation, a corporation in which they had an ownership interest. In March 2004, GSSS's attorneys located $2,647.89 in an inactive savings account at Columbia Bank in Morgan's name.

¶8 On January 12, 2005, GSSS filed a comprehensive memorandum highlighting each of Morgan's and Michelle's interests, claims, and assets that GSSS had discovered during the guardianship.

¶9 On August 2, 2005, due to a change in GSSS's management, the court appointed Capitol Guardianship Services (CGS) as the substitute limited guardian of Morgan's and Michelle's estates and gave CGS the same authority that GSSS had had. GSSS thereafter filed a request for its fees and costs, and the fees and costs of its attorneys.

¶10 On October 31, 2005, the court authorized payment from the girls' guardianship estates of both guardians' fees and costs and Hertog & Coster's legal fees and costs through August 5, 2005. The fees and costs totaled $30,085.17. GSSS had already paid—from guardianship assets—Robin Balsam's[3] and Charles Granoski's[4] fees and costs of

---

[3] Robin Balsam is the attorney for CBGS.

[4] Charles Granoski was the guardian ad litem of Morgan's and Michelle's estates before the court appointed GSSS.

$10,951.00 and $3,368.00, respectively.[5] As of October 31, 2005, Morgan's and Michelle's guardianship estates had paid $44,404.17 in guardianship and legal fees and costs.

¶11 On February 15, 2006, the court approved the guardian's fee requests for work performed between August 5, 2005 and February 15, 2006, authorized CGS to pay itself $2,117.00 from Morgan's and Michelle's guardianship assets, and ordered Michael to pay Hertog & Coster $14,382.34 for legal fees and costs.

¶12 Michael, on his own, Morgan's, and Michelle's behalf, appeals (1) the February 15, 2006 order approving and directing payment of guardian's and attorney's fees and costs; (2) the February 15, 2006 order on guardian's petition for instructions regarding appeal; and (3) the March 10, 2006 judgment against him for $14,382.34. Michael also appeals (1) the August 2, 2005 order on GSSS's annual report of the estate and substitution of guardian; (2) the October 31, 2005 order approving and directing payment of GSSS's, CGS's, and Hertog & Coster's fees and costs; (3) the October 31, 2005 order requiring Shannon Keene to post a bond as trustee of the Michelle Patricia Gillespie McKean trust; and (4) the October 31, 2005 order unblocking the girls' financial accounts. He argues that, when combined, these orders represent the trial court's final decision on GSSS's annual report, including approval and payment of GSSS's fees and Hertog & Coster's fees and costs. We consolidated the two appeals.

¶13 We address three issues: (1) whether the court exceeded its statutory authority by authorizing the guardians to investigate, collect, and monitor all trust and nontrust property in which Morgan and Michelle had any interest, (2) whether the court should have reduced the guardian and attorney fees and costs because they launched their investigation without first citing Michael into court to explain the nature and location of the chil-

---

[5] Those amounts represented fees and costs incurred to establish the guardianship of Morgan and Michelle McKean.

dren's assets, and (3) whether the court erred in assessing some of the fees and costs against Michael. We find error only in the court's basis for apportioning fees between the guardianship and Michael.

## ANALYSIS

### I. The Trial Court's Authority To Authorize the Limited Guardian's Actions

¶14 Michael argues that the trial court exceeded its statutory authority when it broadly authorized GSSS to investigate, monitor, and recover Morgan's and Michelle's assets.

¶15 A guardian is the court's agent through which the court seeks to protect the ward's interest. *See* RCW 11.92.010; *In re Guardianship of Gaddis*, 12 Wn.2d 114, 123, 120 P.2d 849 (1942). A limited guardian has a duty to "protect and preserve the guardianship estate." RCW 11-.92.040(4). To help limited guardians fulfill this duty, the legislature gives the courts "full and ample power and authority . . . to administer and settle . . . [a]ll matters concerning the estates and assets of incapacitated . . . persons."[6] RCW 11.96A.020(1)(a).

¶16 Further, RCW 11.96A.020(2) states that

[i]f [Title 11 RCW] should in any case or under any circumstance be inapplicable, insufficient, or doubtful with reference to the administration and settlement of [matters concerning the estates and assets of incapacitated persons], the court nevertheless has full power and authority to proceed with such administration and settlement in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court.

To this end, "[t]he court may make, issue, and cause to be filed or served, any and all manner and kinds of orders,

---

[6] RCW 11.96A.030(1)(b) states that " '[m]atter' includes any issue, question, or dispute involving . . . [t]he direction of a personal representative . . . to do . . . any act in a fiduciary capacity."

judgments, citations, notices, summons, and other writs and processes that might be considered proper or necessary in the exercise of the jurisdiction or powers given or intended to be given by [Title 11 RCW]." RCW 11.96A.060.

¶17 RCW 11.96A.020(2) grants the court "full power and authority to proceed with [estate] administration and settlement in any manner and way that to the court seems right and proper." And RCW 11.96A.060 broadly defines the legal tools available for the court to administer and settle a guardian's estate. Together, the statutes provided the court with authority to order GSSS to discover, identify, inventory, marshal, and monitor the girls' guardianship assets. But the question remains whether the court should have used available statutory procedures to protect and preserve the guardianship estate.

II. The Court's and GSSS's Duty to Morgan and Michelle

¶18 In addition to its other duties, a limited guardian must "protect and preserve the guardianship estate." RCW 11.92.040(4); *see In re Guardianship of Karan*, 110 Wn. App. 76, 85, 38 P.3d 396 (2002) (in matters involving the welfare of minors, the courts assume a particular duty to protect the wards' interests (citing *Durham v. Moe*, 80 Wn. App. 88, 91, 906 P.2d 986 (1995))). Michael does not question the guardians' duty to marshal and inventory Morgan's and Michelle's nontrust accounts. But he contends that "[b]y [ignoring RCW 11.92.185 and] authorizing improper 'investigatory' activities and payment therefor from [Morgan's and Michelle's] non-trust assets, the court breached its duty to protect" Morgan's and Michelle's interests. Reply Br. of Appellant at 17.

¶19 Chapter 11.96A RCW applies "to disputes arising in connection with estates of incapacitated persons unless otherwise covered by chapters 11.88 and 11.92 RCW." RCW 11.96A.080(2). Michael maintains that chapter 11.92 RCW covers this dispute, which he argues is "whether Michael McKean (or through his influence, Shannon [Keene]) had

'in his or her possession' property or assets of the wards or whether Michael McKean 'had concealed, embezzled, conveyed or disposed of' such property or assets." Reply Br. of Appellant at 7. Michael argues that the court should have used RCW 11.92.185 to resolve the dispute over whether he, Keene, or Connie improperly controlled Morgan's or Michelle's property.

¶20 Under RCW 11.92.185, the "court shall have authority to bring before it, in the manner prescribed by RCW 11.48.070, any person . . . suspected of having in his or her possession or having concealed, embezzled, conveyed or disposed of any of the property of the estate of incapacitated persons subject to administration under [Title 11 RCW]." RCW 11.48.070 provides:

> The court shall have authority to bring before it any person . . . suspected of having in his possession or having concealed, embezzled, conveyed or disposed of any of the property of the estate[7] . . . . Such party may be brought before the court by means of citation . . . and if he refuse [sic] to answer such interrogatories . . . , the court may commit him to the county jail.

¶21 Here, evidence showed that Michael, Keene, and Connie had concealed, embezzled, conveyed, or disposed of Morgan's and Michelle's assets. For example, the trial court in Michael's and Connie's dissolution found that after Michael learned the federal government was investigating him, he attempted to hide his separate property. Charles Granoski, the previous guardian ad litem of Morgan's and Michelle's estates, stated that Michael set up trusts for Morgan's and Michelle's benefit to place Michael's assets out of the federal government's reach. And CBGS's attorney, Robin Balsam, testified that "it is clear . . . that the

---

[7] Although this sentence refers only to decedents, and not incompetents, RCW 11.92.185 provides the court with authority to bring before it, in the *manner* prescribed by RCW 11.48.070, those persons suspected of having concealed, embezzled, conveyed, or disposed of any of the incapacitated person's estate. RCW 11.92.185 refers to the court's authority to initiate a procedure to address concerns that someone has possession of, or has concealed, embezzled, conveyed, or disposed of the incapacitated person's estate property. Thus, this sentence includes incompetents as well as decedents for purposes of RCW 11.92.185.

(Irrevocable Trust of Michael Allison McKean's Children's) assets are in peril and are subject to being dissipated, stolen and wasted without an independent party stepping in to protect the children's financial interests." CP at 189. Indeed, Michael admitted that he took his name off cash accounts he set up for Morgan before he went to prison and put Connie's name on them "because of the uncertainty of what might happen to [him] with the government. [He] wanted as much safe money in the name of [his] children as possible." CP at 1113.

¶22 The evidence also showed that Keene spent most of the Michelle McKean dependency trust's corpus to purchase Fox Island real property at Michael's direction. GSSS argued that Keene's conduct was particularly problematic given that Michelle's dependency trust was intended to provide for Michelle McKean's support, care, custody, medical treatment, and residential home life. The record also shows that nobody filed a tax return for Morgan from 2000 through 2003. And Laura McKean, Michelle's mother, testified that Connie stole $15,000 from Michelle's account. Also, in its fourth annual report, GSSS stated that it discovered that Connie withdrew $35,060.76 from Morgan's Columbia Bank account and deposited it into her own.

¶23 In its order approving GSSS's fourth annual guardian's report, the court stated that "[i]t was necessary for [GSSS] to independently verify the amount and location of all assets belonging to Morgan and Michelle . . . given [Michael's] disbarment as an attorney and his criminal acts involving moral turpitude." CP at 918. Finally, in a hearing regarding the fees and costs accumulated in this proceeding, the court said that given Michael's alleged underhandedness with respect to the girls' assets, it did not fault GSSS for trying to verify what Michael and his attorneys told GSSS about those assets. The court stated that "[c]ertainly one would be skeptical with regards to Mr. McKean in that regard." Report of Proceedings (RP) (Sept. 7, 2005) at 35.

¶24 Yet Michael maintains that the court should have used RCW 11.92.185 to resolve these allegations rather

than authorizing GSSS to "conduct a carte blanche investigation . . . to 'pursue recovery' of [any] dissipated, embezzled, or concealed [assets]." Br. of Appellant at 20-21. We disagree.

¶25 In a different case, RCW 11.92.185 would likely provide the most efficient tool to locate and take control of a ward's assets. But we cannot fault these guardians and their attorneys for deciding that the statutory procedure would have accomplished little, if anything. Not only did Michael, Keene, and Connie transfer and hide assets for Michael's and Connie's benefit, Michael manipulated the legal proceedings and prevented the recovery of assets to cover these transactions. For example, in the proceedings below, although GSSS secured a $10,000 cashier's check from Connie to repay to Michelle the $10,000 that Connie misappropriated, Michael convinced the court to order GSSS to return the check and allow him and his attorney to pursue recovery of the $10,000 plus the outstanding interest.[8] GSSS's attorneys represented to us at oral argument that Michael has not recovered any part of the $10,000. Nor has he paid Michelle's $3,401 dental bill that the court ordered him to pay. Given these circumstances, we conclude that the guardians were not obligated to cite Michael into court to explain where the assets were before launching their investigation.

### III. REASONABLENESS OF GUARDIAN AND ATTORNEY FEES

¶26 Michael argues that the trial court abused its discretion when it authorized payment of GSSS's, CGS's, and

---

[8] Michael opposed accepting the check, stating that Connie had the ability to pay the $10,000 plus the outstanding interest. During a hearing regarding the $10,000, Michael told the court that "[t]he $10,000 meant nothing to me or to my daughters in comparison to what could have been a good reconciliation [between Connie and him] . . . . None of this family has ever been dying for money. . . . The $10,000 is insignificant. Does Connie owe it? Yes . . . . Could I have told [my attorney to] attack her? Yes, I could have [but] I thought there were higher issues so I didn't." RP (Aug. 2, 2005) at 83. After arguing that the court should allow Michael and his attorney to recover the $10,000 plus the outstanding interest, Michael's attorney asked the court to order Morgan's and Michelle's guardianship estates to pay his fees incurred in recovering the money from Connie.

Hertog & Coster's fees and costs that totaled nearly 100 percent of Morgan's and Michelle's guardianship assets. Michael does not challenge any particular item of work. Rather, he argues that the guardians did not need to independently investigate the children's assets because (1) all but one small asset was disclosed in the dissolution and (2) the guardian failed to cite him into court to explain the assets.

¶27 We review a superior court's fees and costs award for an abuse of discretion. *In re Guardianship of Spiecker*, 69 Wn.2d 32, 34-35, 416 P.2d 465 (1966) (citing *In re Estate of Leslie*, 137 Wash. 20, 241 P. 301 (1925)). A trial court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or when untenable reasons support the decision. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971) (citing *MacKay v. MacKay*, 55 Wn.2d 344, 347 P.2d 1062 (1959)).

¶28 A limited guardian is entitled to "such compensation for [its] services as . . . the court shall deem just and reasonable." RCW 11.92.180. And a court may award "[a]dditional compensation . . . for other administrative costs, including services of an attorney." RCW 11.92.180. But the court may not award fees simply on the basis of work performed. *In re Guardianship of Hallauer*, 44 Wn. App. 795, 800, 723 P.2d 1161 (1986). Rather, the court must determine the need for the work done and whether it benefited the guardianship. *Hallauer*, 44 Wn. App. at 800 (citing *In re Estate of Larson*, 103 Wn.2d 517, 523-24, 530-32, 694 P.2d 1051 (1985)).

¶29 The trial court did not err in finding GSSS's, CGS's, and Hertog & Coster's fees and costs reasonable. The court ordered GSSS to investigate Morgan's and Michelle's trust and nontrust assets. In addition to verifying the amounts of Morgan's and Michelle's assets, GSSS contested the sale of the Fox Island property held in the Michelle McKean dependency trust, and the distribution of the $266,000 resulting from that sale. Despite GSSS's efforts to have the court apportion the sale's proceeds to

Michelle, Michael persuaded the court to allow Keene, the trustee, to release the Fox Island property's sale proceeds to him. GSSS also disputed the value of Morgan's and Michelle's Environmental Fuel Development Corporation stock shares. Michael has at different times valued these shares at either nothing or $200,000 for each child, and Keene valued the shares at $1,000,000 for each child. The shares' true value is apparently still not known.

¶30 During these proceedings, the court entertained numerous contested hearings. The record shows that Michael and Keene fought GSSS at each stage, from GSSS's appointment through the final order awarding fees and costs. GSSS did not have to prove that it prevailed in every legal battle with Michael to show a benefit to the guardianship. *See In re Estate of Black*, 116 Wn. App. 476, 490-91, 66 P.3d 670 (2003). GSSS's work in this guardianship brought to light Morgan's and Michelle's assets and interests, a task that GSSS claimed "eluded two previous guardian[s] ad litem [and the] judge in the dissolution proceeding." RP (Aug. 29, 2005) at 27. The trial court did not abuse its discretion in determining that GSSS's, CGS's, and Hertog & Coster's fees were reasonable.

### IV. FEES APPORTIONED TO MICHAEL McKEAN

¶31 The court ordered Michael to pay the $14,382.34 in total fees and costs that the guardianship estates had insufficient funds to cover. Michael argues that the trial court abused its discretion in ordering this award.

¶32 RCW 11.96A.150(1) provides that "the superior court . . . may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings . . . in such amount and in such manner as the court determines to be equitable." The court's order regarding payment of guardian and attorney fees lists Michael as a party to the guardianship proceedings. And although Michael's attorney objected to several provisions in the proposed order, he never argued

that Michael was not a party to the proceedings. Accordingly, the court had authority to apportion fees and costs to him.

¶33 Although Michael's deceptive manipulation of his children's assets would support an order requiring him to pay some or all of the fees and costs, the court did not enter such a finding. *See* RCW 11.96A.150(1) (the court may order fees and costs "in such manner as the court determines to be equitable"). Instead, the court apparently ordered Michael to pay because the guardianship could not. But the simple ability to pay does not provide an equitable basis for the award. Rather, equity requires some finding of fault that in fairness requires a party to pay. Here, the trial court should have considered allocating fees amongst those who created the need for the guardianship. *See, e.g., In re Estate of Jones*, 152 Wn.2d 1, 20-21, 93 P.3d 147 (2004) (personal representative/beneficiary of a will ordered to pay other beneficiaries' attorney fees personally "because the litigation was necessitated by his multiple breaches of fiduciary duty" to those beneficiaries); *see also Gillespie v. Seattle-First Nat'l Bank*, 70 Wn. App. 150, 177-78, 855 P.2d 680 (1993) (even absent bad faith or self-dealing, attorney fees equitably assessed against the trustee where, but for its breach of fiduciary duty, the beneficiaries would not have needed to incur the fees). And the record amply demonstrates that Michael, Keene, and Connie created the need for the guardianships.

## V. Conflict of Interest

¶34 For the first time on appeal, Michael argues that the "sweeping breadth of the court's order appointing the limited guardian created a conflict of financial interest between the wards and their guardians." Br. of Appellant at 24.

¶35 We do not address an error raised for the first time on appeal unless it is a manifest error affecting a constitutional right. RAP 2.5(a). Michael does not argue

that this alleged conflict is a manifest error affecting a constitutional right. Accordingly, we decline to address the issue.

## VI. ATTORNEY FEES ON APPEAL

¶36 GSSS seeks an award of attorney fees against Michael's counsel under RAP 18.9, alleging that counsel used the rules of appellate procedure "for purposes of delay, file[d] a frivolous appeal, [and] fail[ed] to comply with [the rules of appellate procedure]." Br. of Resp't at 31 (citing RAP 18.9(a)).

¶37 Michael seeks attorney fees on appeal under RAP 18.1(a), which allows attorney fees on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." Under RCW 11.96A.150(1), in a guardianship proceeding, we "may . . . order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings."

¶38 Michael's appeal is not frivolous. And although we have agreed with Michael that the trial court erred in assessing fees against him because of his ability to pay, we remand to the trial court to award all attorney fees and costs, including those incurred on appeal, against Michael, Keene (if a party), and Connie (if a party) because their conduct required the guardianships.[9] Accordingly, we decline to assess sanctions under RAP 18.9(a).

¶39 We vacate the trial court's award of costs and fees and remand for the trial court to consider how the guardian and attorney fees and costs should be apportioned among those parties whose conduct created the need for Morgan's and Michelle's guardianships.

BRIDGEWATER and PENOYAR, JJ., concur.

---

[9] Our record does not show whether Keene and Connie, individually or in a representative capacity, are presently parties to the guardianship proceedings.